ISABELLE ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
CHELSEA N. MUTUAL (Bar No. 299656)
chelsea.mutual@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

RAJ N. SHAH (admitted *pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (admitted *pro hac vice*)
eric.roberts@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.251.5714

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| Gabriella Zaragoza and Joseph Coyle, individually and on behalf of all others similarly situated,,<br><br>              Plaintiffs,<br><br>     v.<br><br>Apple Inc.,<br>              Defendant. | CASE NO. 4:18-CV-06139-PJH<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, AND MEMORANDUM IN SUPPORT THEREOF**<br><br>**(FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6))**<br><br>Date:      February 13, 2019<br>Time:      9:00 a.m.<br>Room:     3<br>Judge:     Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...........................................................................................................2

II.    BACKGROUND .............................................................................................................3

    A.     Allegations Regarding the Plaintiffs' Transactions..............................................4

    B.     The Plaintiffs' Claims for Relief. ........................................................................7

    C.     Information in Apple's Request for Judicial Notice. ............................................7

        1.     The Detailed Content Listing in the Menus. ...........................................7

        2.     The Warranty Disclaimer in the Agreement. ..........................................9

III.   ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3)) .....................................................9

IV.    LEGAL STANDARD ..................................................................................................10

V.     ARGUMENT ...............................................................................................................10

    A.     The CLRA, UCL, FAL, and Common Law Fraud Claims Fail As a Matter of Law. ..............................................................................................................10

        1.     The Menus Would Not Mislead or Deceive a Reasonable Consumer. .....11

        2.     The CLRA Does Not Apply to the Plaintiffs' Transactions. ..................15

    B.     The N.Y. G.B.L. §§ 349 and 350 Claims Fail as a Matter of Law. ....................16

    C.     The Plaintiffs' Warranty Claims Fail as a Matter of Law....................................18

        1.     The UCC Is Inapplicable Because the Plaintiffs Did Not Buy "Goods." .................................................................................................18

        2.     The Plaintiffs Cannot Allege an Express or an Implied Warranty...........19

            a.     The Term "Episode" Is Not an Express Warranty. .....................19

            b.     The Agreement Disclaimed Any and All Alleged Warranties.....21

    D.     The Plaintiffs' Common Law Fraud Claims Fail as a Matter of Law..................22

    E.     The Plaintiffs Cannot Assert a Quasi-Contract Claim for Restitution. ................23

    F.     The Plaintiffs Have Not Suffered Any Actionable Injury....................................24

VI.    CONCLUSION ............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amendola v. Basement Waterproofing Co. of Flushing, Inc.*,
   610 N.Y.S.2d 313 (N.Y. App. Div. 1994)................................................................18

*Architectronics, Inc. v. Control Sys., Inc.*,
   935 F. Supp. 425 (S.D.N.Y. 1996)........................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................10

*BAT, LLC v. TD Bank, NA*,
   No. 15 cv 5839, 2018 WL 4693644 (E.D.N.Y. Sept. 28, 2018) .............................24

*Baxter v. Intelius, Inc.*,
   No. 09 cv 1031, 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) .............................14

*Belfiore v. Procter & Gamble Co.*,
   311 F.R.D. 29 (E.D.N.Y. 2015) ............................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................10

*Bobo v. Optimum Nutrition, Inc.*,
   No. 14 cv 2408, 2015 WL 13102417 (S.D. Cal. Sept. 11, 2015)......................12, 20

*Bowring v. Sapporo USA, Inc.*,
   234 F. Supp. 3d 386 (E.D.N.Y. 2017)....................................................................17

*Brady v. Bayer Corp.*,
   26 Cal. App. 5th 1156 (2018)................................................................................13

*Brod v. Sioux Honey Ass'n, Co-op*,
   927 F. Supp. 2d 811 (N.D. Cal. 2013) ...................................................................11

*Broomfield v. Craft Brew Alliance, Inc.*,
   No. 17 cv 1027, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017)...............................20

*Castagnola v. Hewlett-Packard Co.*,
   No. 11 cv 05772, 2012 WL 2159385 (N.D. Cal. May 26, 2015).............................14

*Crawford v. Franklin Credit Mgmt. Corp.*,
   758 F.3d 473 (2d Cir. 2014)..................................................................................16

*Cruz v. Anheuser-Busch, LLC*,
   No. 14 cv 9670, 2015 WL 3561536 (C.D. Cal. June 3, 2015)................................20

DEFENDANT'S MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

*Daniel v. Mondelez Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018)............................................................................16, 22

*Daniel v. Tootsie Roll Indus., LLC*,
  No. 17 cv 7541, 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018)................................16, 17, 18, 23

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
  27 F. Supp. 3d 357 (E.D.N.Y. 2014)....................................................................................24

*Davidson v. Apple Inc.*,
  No. 16 cv 4942, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ...............................................21

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012)....................................................................................3, 12, 13

*Dickey v. Advanced Micro Devices, Inc.*,
  No. 15 cv 4922, 2016 WL 6427852 (N.D. Cal. Oct. 31, 2016) ..........................................15, 20

*Egleston v. The Valspar corp.*,
  No. 15 cv 4130, 2015 WL 6508329 (S.D.N.Y. Oct. 13, 2015)................................................17

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
  910 N.E.2d 976 (N.Y. 2009) .................................................................................................22

*Express, LLC v. Fetish Grp., Inc.*,
  464 F. Supp. 2d 965 (C.D. Cal. 2006)...................................................................................24

*F.B.T. Prods., LLC v. Aftermath Records*,
  621 F.3d 958 (9th Cir. 2010).................................................................................................16

*Forouzesh v. Starbucks Corp.*,
  No. 16 cv 3830, 2016 WL 4443203 (C.D. Cal. Aug. 19, 2016) ..........................................14, 20

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995).............................................................................................12, 14

*Goldman v. Bayer AG*,
  No. 17 cv 647, 2017 WL 3168525 (N.D. Cal. July 26, 2018) ................................................13

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ....................................................................11, 12, 14, 18

*Herskowitz v. Apple Inc.*,
  940 F. Supp. 2d 1131 (N.D. Cal. 2013) ................................................................................22

*Hines v. Overstock.com, Inc.*,
  No. 09 cv 991, 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013) ................................................24

*Hollman v. Taser Int'l Inc.*,
  928 F. Supp. 2d 657 (E.D.N.Y. 2013)...................................................................................21

DEFENDANT'S MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

*Ileto v. Glock*,
    349 F.3d 1191 (9th Cir. 2003) ...............................................................................10

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ..................................................................24

*In re iPhone 4S Consumer Litig.*,
    No. 12 cv 1127, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ......................16, 24

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ...................................................................11

*Joe Hand Promotions, Inc. v. Bragg*,
    No. 13 cv 2725, 2016 WL 773223 (S.D. Cal. Feb. 29, 2016).........................18, 19

*Jones v. ConAgra Foods, Inc.*,
    912 F. Supp. 2d 889 (N.D. Cal. 2012) ..................................................................12

*Kaplan v. Cablevision of Pa., Inc.*,
    671 A.2d 716 (Pa. Super. Ct. 1996) ......................................................................19

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*,
    494 F. App'x 153 (2d Cir. 2012)...........................................................................23

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)..........................................................................11, 22

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017) ..................................................................16

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017).................................................................................3

*Lance Camper Mfg. Corp. v. Repub. Indem. Co.*,
    44 Cal. App. 4th 194 (1996) .................................................................................23

*Lazebnik v. Apple Inc.*,
    No. 13 cv 4145, 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) ......................15, 16

*Macaspac v. Henkel Corp.*,
    No. 17 cv 1755, 2018 WL 2539595 (S.D. Cal. June 4, 2018) ...............................14

*Manuel v. Pepsi-Cola Co.*,
    No. 17 cv 7955, 2018 WL 2269247 (S.D.N.Y. May 17, 2018) ............................18

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003)................................................................................23

*Meyer v. Sprint Spectrum, L.P.*,
    45 Cal. 5th 634, 641 (2009)...................................................................................24

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ...........................................................................21

*Mosier v. Stonefield Josephson, Inc.*,
    815 F.3d 1161 (9th Cir. 2016) ....................................................................................23

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ........................................................................21

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.*,
    157 Cal. App. 4th 835 (2007) .....................................................................................22

*Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*,
    51 F. Supp. 3d 379 (S.D.N.Y. 2014) ..........................................................................22

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996)......................................................................................23

*Peterson v. Cellco P'ship*,
    164 Cal. App. 4th 1583 (2008)...................................................................................24

*Richter v. CC-Palo Alto, Inc.*,
    176 F. Supp. 3d 877 (N.D. Cal. 2016) ........................................................................25

*Riggins v. Bank of Am., NA*,
    No. 12 cv 33, 2013 WL 319285 (C.D. Cal. Jan. 24, 2013) .........................................22

*San Miguel v. HP Inc.*,
    317 F. Supp. 3d 1075 (N.D. Cal. 2018) ...............................................................12, 15

*Schwartz v. US*,
    234 F.3d 428 (9th Cir. 2000)........................................................................................4

*Shema Kolainu-Hear Our Voices v. Providersoft, LLC*,
    832 F. Supp. 2d 194 (E.D.N.Y. 2010).........................................................................21

*Shin v. Washington Mut. Bank, FA*,
    No. 18 cv 2143, 2018 WL 4491185 (N.D. Cal. Sept. 19, 2018)...................................23

*Simmons v. Washing Equip. Techs.*,
    912 N.Y.S.2d 360 (N.Y. App. Div. 2010)...................................................................19

*Small v. Lorillard Tobacco Co., Inc.*,
    94 N.Y.2d 43 (2004) ..................................................................................................24

*Smith v. LG Elecs. USA, Inc.*,
    No. 13 cv 4361, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ...................................11

*Solak v. Hain Celestial Grp., Inc.*,
    No. 17 cv 704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018)......................................20

v

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013)...........................................................................10

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)...........................................................................10

*Tae Hee v. Toyota Motor Sales, USA, Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014).............................................................22

*Transnational Mgmt. Sys. II, LLC v. Carcione*,
  No. 14 cv 2151, 2016 WL 7077040 (S.D.N.Y. Dec. 5, 2016)..........................23

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)..........................................................................11

*Victor v. R.C. Bigelow, Inc.*,
  No. 13 cv 2976, 2014 WL 12642194 (N.D. Cal. July 18, 2014) ......................15

*Wall Street Network, Ltd. v. New York Times Co.*,
  164 Cal. App. 4th 1171 (2008).........................................................................19

*Washington v. Kellwood Co.*,
  No. 05 cv 10034, 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009).......................24

*Weinstein v. eBay, Inc.*,
  819 F. Supp. 2d 219 (S.D.N.Y. 2011) .........................................................16, 17

*Williamson v. Apple Inc.*,
  No. 11 cv 377, 2012 WL 3835104 (N.D. Cal. Sept. 4, 2012)...........................11

*Wurtzburger v. Kentucky Fried Chicken*,
  No. 16 cv 8186, 2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) ........................17

*Yastrab v. Apple Inc.*,
  173 F. Supp. 3d 972 (N.D. Cal. 2016) ..........................................................11, 19

**STATUTES**

Cal Bus. & Prof. Code § 17204...........................................................................24

Cal Bus. & Prof. Code § 17535...........................................................................24

Cal. Civ. Code § 1761(b), (c)...............................................................................15

Cal. Civ. Code § 1770 ..........................................................................................15

Cal. Com. Code § 2105 .........................................................................................18

Cal. Com. Code § 2313 ...........................................................................................7

vi

Cal. Com. Code § 2314(1) ..................................................................................7

Cal. Com. Code § 2316 ......................................................................................21

Cal. Com. Code § 2316(3)(a) .............................................................................21

Cal. Com. Code § 2317 ......................................................................................21

Civ. L.R. 7-4(A)(3) ...............................................................................................9

CLRA § 1770(a)(5) ..............................................................................................7

CLRA § 1770(a)(7) ..............................................................................................7

CLRA § 1770(a)(9) ..............................................................................................7

N.Y. G.B.L. § 349 ....................................................................................... passim

N.Y. G.B.L. § 350 ....................................................................................... passim

N.Y. U.C.C. § 2-105 ...........................................................................................18

N.Y. U.C.C. § 2-313 .............................................................................................7

N.Y. U.C.C. § 2-314(1) .........................................................................................7

N.Y. U.C.C. § 2-316 ...........................................................................................21

N.Y. U.C.C. § 2-316(3)(a) ..................................................................................21

N.Y. U.C.C. § 2-317 ...........................................................................................21

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .......................................................................................11, 22

Fed. R. Civ. P. 12(b)(1) .....................................................................................25

Fed. R. Civ. P. 12(b)(6) .....................................................................................10

U.S. Const. Article III ...............................................................................3, 10, 25

DEFENDANT'S MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

## NOTICE OF MOTION AND MOTION

**To All Parties and Their Attorneys of Record:**

**Please take notice that** on February 13, 2019, at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Phyllis J. Hamilton in Courtroom 3 of the above-entitled Court located at 1301 Clay Street, Oakland, California 94612, Defendant Apple Inc. ("Apple") will and hereby does move to dismiss, with prejudice, the Class Action Complaint of Plaintiffs Gabriella Zaragoza and Joseph Coyle, individually and on behalf of all others similarly situated, and each claim for relief asserted therein against Apple.

Apple brings this motion first under Fed. R. Civ. P. 12(b)(6) on the grounds that the plaintiffs fail to state a claim: (1) under the Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law, False Advertising Law, sections 349 and 350 of the New York General Business Law, or the common law, because the plaintiffs do not plausibly allege that they were misled and deceived; (2) under the CLRA, because the plaintiffs' transactions with Apple did not involve "goods or services;" (3) for breach of any warranty under the Uniform Commercial Code, because Apple did not sell the plaintiffs "goods," made no express representation of fact that was breached, and disclaimed the implied warranty of merchantability; or (4) for quasi-contract/restitution, because the claim is barred by the existence of an express contract. Second, the plaintiffs' claims fail under Fed. R. Civ. P. 12(b)(1) because they have not alleged an injury-in-fact. This motion is based on the Notice of Motion and Motion, Memorandum of Points and Authorities, Declaration of Anh Nguyen, Request for Judicial Notice and exhibits, all pleadings and papers filed herein, the arguments of counsel, and any other matters properly before the Court.

Dated:  December 13, 2018

DLA PIPER LLP (US)

By: /s/ *Isabelle L. Ord*

ISABELLE ORD
RAJ N. SHAH
ERIC M. ROBERTS
CHELSEA N. MUTUAL

Attorneys for Defendant
APPLE INC.

1

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION**

3       The plaintiffs in this case unreasonably claim that they were deceived because they did not

4  receive the number of "plot-based episodes" they assumed would be included as part of television

5  season packages purchased on their Apple TV 4 or 4K multi-media entertainment devices ("Apple

6  TV"). By accessing Apple's iTunes Store through their Apple TV devices, plaintiffs Gabriella

7  Zaragoza ("Zaragoza") and Joseph Coyle ("Coyle," and with Zaragoza, the "plaintiffs") have the

8  ability to download digital content onto their televisions and purchase television shows episode-

9  by-episode or through a package that includes all episodes within the season.

10       Each plaintiff allegedly visited a menu for a television series within iTunes and selected

11  the "Season Pass" option, which provided access to any episodes of the selected show already

12  aired, plus yet-to-be-released episodes remaining in the season. With their purchases of the Season

13  Passes, the plaintiffs did receive their respective television shows, and even bonus content, but

14  they complain that they thought there would be more "standard, plot-based episodes" included in

15  their Season Passes.  As a result, the plaintiffs allegedly did not receive as "significant" a discount

16  as they had assumed.

17       More specifically, the plaintiffs allege that they were deceived and misled by the television

18  show menus as to the actual number of "standard, plot-based episodes" that were included with the

19  Season Pass. The menus, as more fully set forth below, contain a great deal of information about

20  episodes and pricing, but the plaintiffs isolate a single word, taken out of context, and allege that

21  where the menus list a number of "Episodes," consumers reasonably understand that term to mean

22  the number of "standard, plot-based episodes" in the Season Pass. According to the plaintiffs,

23  because the "Episode" display on the menu counts bonus features, it is inflated.

24       The phrase "standard, plot-based episode" does not appear on the menus, and there is no

25  representation that the plaintiffs would receive any specific discount by purchasing the Season

26  Pass. To the contrary, the word "Episodes" does not appear in isolation; it is paired with a listing

27  of the episodes in a banner that spanned the screen and easily could be scrolled to discern the

28  content and price of each episode, including bonus features. The plaintiffs' Complaint includes

DEFENDANT'S MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

partial screenshots but omits complete pictures reflecting the scrolling aspects of the menus. If the plaintiffs had reviewed the entire menu by scrolling, they could have assessed each episode's content to count the number of "plot-based episodes" and allegedly "promotional clips." The plaintiffs, however, do not allege that they scrolled through this menu. Apple's alleged representation does not become false and deceptive because it is unreasonably misunderstood by the plaintiffs, who either chose not to read the entire menus or ignored the information there.

The Complaint and each of the plaintiffs' causes of action fails. First, there was no deception or false statement to sustain the plaintiffs' California and New York consumer protection claims. Second, the purchase of television content is not a "good or service" but is rather a license of "content" not actionable under the CLRA or warranty laws. Third, there is no statement that constitutes an actionable warranty under the plaintiffs' California and New York statutory warranty claims, let alone one that was breached. Moreover, the terms and conditions that governed the plaintiffs' purchases expressly bar any claim for breach of an implied warranty. Fourth, the plaintiffs' fraud-based claims fail for the same reasons and also because of significant pleading defects under the heightened pleading standards required to sustain fraud claims. Fifth, the unjust enrichment claim cannot survive because there was an express contract that governed the plaintiffs' purchase of television content. Finally, the plaintiffs fail to allege any injury-in-fact and lack Article III and statutory standing.

In sum, the plaintiffs were given complete, accurate information and received the benefit of their bargain for the Season Passes. Any suggestion to the contrary is not plausible in view of the complete menus. For the reasons stated in greater detail below, Apple requests that the Court dismiss the plaintiffs' claims with prejudice and deny any leave to amend the allegations as futile.

## II.   BACKGROUND

Sections A and B of the following summary are based on the Complaint and assume "the veracity of" any "well-pleaded factual allegations." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). Pursuant to the "incorporation-by-reference doctrine," section C takes into account "documents whose contents are alleged in a complaint and whose authenticity no party questions." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quotation

1   omitted). The Court need not assume the truth of any of the plaintiffs' allegations contradicted by

2   judicially noticeable facts. *Schwartz v. US*, 234 F.3d 428, 435 (9th Cir. 2000).

3       **A.      Allegations Regarding the Plaintiffs' Transactions.**

4       The plaintiffs have the ability to browse and watch a variety of popular television content

5   through purchases from iTunes. On May 31, 2017, Zaragoza allegedly used her Apple TV iTunes

6   to access the television series "Genius: Einstein," Compl. ¶ 12, where she was provided "general

7   information" about the show in an interactive, scrollable menu, *id.* at ¶¶ 16-17. On May 20, 2018,

8   Coyle allegedly used his Apple TV and iTunes to access the television series "Killing Eve," *id.* at

9   ¶ 13, where he also viewed "general information" in an interactive, scrollable menu, *id.* at ¶¶ 16-

10  17. At the time of their purchases, the seasons for their shows had commenced but were not yet

11  complete. The plaintiffs allege that they reviewed the information on the menus and decided to

12  make a purchase of a "Season Pass," *id.* at ¶¶ 12-13, which granted them access to "all current and

13  future episodes for the season" *in lieu* of purchasing each episode separately, *id.* at ¶ 3.

14      By season's end, Zaragoza had received the six "plot-based episodes" that had aired before

15  her purchase, plus the four "plot-based episodes" that aired later. *See id.* at ¶¶ 12, 23. Similarly,

16  three of the eight "plot-based episodes" in season one of "Killing Eve" did not air until after

17  Coyle's purchase and were not yet available for individual purchase through iTunes at the time of

18  his purchase. *See id.* at ¶ 13; Declaration of Anh Nguyen in Support of Request for Judicial Notice

19  ("Nguyen Decl.") ¶ 4, Ex. 2 (showing eight episodes). If the plaintiffs had waited until new

20  episodes stopped airing (*i.e.*, the season was completed), they could have selected the "Buy

21  Season" option for the full season of their selected shows. *See* Compl. ¶ 3.

22      Zaragoza alleges that she paid $24.99 for the "Genius: Einstein" Season Pass. *Id.* at ¶ 12.

23  Before making her purchase, Zaragoza allegedly saw "13 Episodes" on the menu. *Id.* The

24  Complaint does not include an image of the menu Zaragoza saw on May 30, 2017; instead, there is

25  a picture of a part of the menu at some later date showing "22 Episodes," *see id.* ¶ 20. The screen

26  capture in the Complaint shows that this episode count appeared directly above a list of the actual

27  episodes. *See id.* Of the "13 Episodes" available on May 30, 2017, six were "plot-based" and

28  seven were bonus content. *Id.* at ¶ 12. Zaragoza acknowledges that she could have scrolled

4

through the episodes in the menu to purchase any or all of the episodes individually, *see id.* at ¶ 18, with each of the six "plot-based episodes" priced at $2.99, *see id.* at ¶ 12. Instead, she chose to pay $24.99 for the Season Pass because she believed that she would receive "a significant discount over purchasing each episode separately." *Id.* Zaragoza admits that her Season Pass gave her access to "all current and future episodes for the season," *id.* at ¶ 3, including all of the episodes listed on the menu as of May 30, 2017. If Zaragoza had paid $2.99 for each individual episode for the 10 "plot-based episodes," she would have spent $29.90. Instead, Zaragoza got a $4.91 discount by buying the Season Pass.

Coyle alleges that he paid $19.99 for the "Killing Eve" Season Pass. *Id.* at ¶ 13. Before his purchase, Coyle allegedly saw "11 Episodes" on the menu. *Id.* Coyle omits an image of the "Killing Eve" menu, so Apple provides the following picture in Exhibit 2 to its Request for Judicial Notice ("RJN"), *see* Nguyen Decl. ¶ 4, Ex. 2:[1]



/////

---

[1] The screenshots included here would be viewed on the plaintiffs' television screens and would be much larger. But for the Court's convenience, Apple includes this depiction within the limitations of a brief. Larger screen shots are attached to the Nguyen Declaration.

DEFENDANT'S MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

Of the "11 Episodes" available on May 20, 2018, five were "plot-based" and six were bonus content.[2] *Id.* Coyle acknowledges that he could have scrolled through the list of episodes in the menu to purchase any or all of the episodes individually, *see id.* at ¶ 18, with each of the five "plot-based episodes" priced at $2.99, *see id.* at ¶ 12. Instead, he chose to pay $19.99 for the Season Pass because he believed that he would receive "a significant discount over purchasing each episode separately." *Id.* Coyle admits that his Season Pass enabled him to access "all current and future episodes for the season," *id.* at ¶ 3, including all of the episodes listed on the menu as of May 20, 2018. If Coyle had paid $2.99 per episode for the eight "plot-based episodes" in season one, he would have spent $23.92. Instead, Coyle got a $3.93 discount by buying the Season Pass.

Because the plaintiffs did not take contemporaneous pictures of the menus when buying their Season Passes, they also include "example" screenshots of menus for other television shows allegedly showing the "same false and deceptive" statements. *Id.* at ¶¶ 20, 24, 25, 28, 29. The picture of the "Genius: Einstein" menu included in the Complaint shows "22 Episodes." *Id.* at ¶ 20. The plaintiffs do not dispute that there are 22 pieces of content provided with the "Buy Season" option (for the completed season depicted in the Complaint), but allege that it is misleading to use the same word "episode" to describe the 10 "plot-based episodes" *and* the 12 episodes of bonus content. *Id.* at ¶ 23.[3] The Complaint makes similar allegations regarding other shows the plaintiffs did not purchase: "Buy Season 2" (the completed season depicted in the Complaint) of HBO's "Westworld" ("25 Episodes" consisting of 10 "plot-based episodes" and 15 episodes of bonus content) and "Buy Season Pass" (the incomplete season depicted in the Complaint) of FX's "The Americans" ("11 Episodes" consisting of 10 "plot-based episodes" and 1 episode of bonus content). *Id.* at ¶¶ 24-30.

/////

---

[2] The plaintiffs do not and cannot allege that they were charged for the alleged "promotional clips." As explained in section C.1, below, their bonus content was free, a fact that was readily available to the plaintiffs from the menus.

[3] The plaintiffs characterize the bonus content as "promotional clips," *see* Compl. ¶ 23, but that is a conclusory—and undeniably loaded—phrase. The plaintiffs do not make any factual allegations as to the content of these bonus episodes. *See* section C, below.

DEFENDANT'S MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

### B.      The Plaintiffs' Claims for Relief.

The crux of every claim in the Complaint is the plaintiffs' allegation that Apple "represents that the episodes included in the Season Features are standard, plot-based episodes" when "many of the episodes included in the Season Features are not standard, plot-based episodes." *See, e.g., id.* at ¶¶ 33-35, 62-64, 80, 87, 94, 104, 110, 118, 126, 134. The plaintiffs also allege that a "reasonable consumer" believes that "by purchasing the Season Features" he or she will receive "a significant discount over purchasing each episode individually" but does not receive "the discount . . . expected." *Id.* at ¶ 5. The plaintiffs allegedly "would not have purchased the Season Features or would have paid significantly less" had they known that there were "fewer standard, plot-based episodes" than they believed they would receive with the Season Pass. *Id.* at ¶ 6.

The plaintiffs assert nine claims for relief: violations of sections 1770(a)(5), (a)(7), and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"); violations of the unlawful, unfair, and fraudulent prongs of the Unfair Competition Law ("UCL"); violation of the False Advertising Law ("FAL"); breach of express warranty under California Commercial Code § 2313 and New York U.C.C. § 2-313; breach of the implied warranty of merchantability under California Commercial Code § 2314(1) and New York U.C.C. § 2-314(1); common law fraud; quasi-contract/restitution; and violation of New York Gen. Bus. Law ("N.Y. G.B.L.") §§ 349 and 350.

### C.      Information in Apple's Request for Judicial Notice.

Apple contemporaneously filed its RJN in support of this motion, which it incorporates herein by reference. As set forth below, the RJN includes: (1) complete pictures of the menus at issue; and (2) Apple's terms and conditions for the plaintiffs' purchases.

#### 1.      The Detailed Content Listing in the Menus.

The Complaint gives the impression that iTunes menus are static displays with truncated episode lists. *E.g.,* Compl. ¶¶ 20, 24, 28. But the iTunes menus for television content on Apple TV are, in fact, far more detailed. *See* Nguyen Decl. ¶¶ 3-6, Ex. 1-3. The full menu for each show contains a listing, in sequence, with a description and price for every episode. Moreover, the "## Episodes" display that the plaintiffs claim is false and deceptive is immediately above the detailed, /////

sequential listing of each episode.  Screen captures from the complete scrollable menu show the types of information provided for every episode.  For example:



The menu clearly delineates between the 10 "Chapters" of "Genius: Einstein" that the plaintiffs' call the "plot-based episodes," and the 12 episodes of bonus content (the "Trailer," "Behind the Scenes," and "Inside Genius" episodes). *See id.*, Ex. 1. Moreover, while each of the 10 "Chapters" is priced $2.99, the bonus content is labeled "free." *Id.* The same is true for the remaining television series cited in the Complaint:

- ▪ The content listing for "Killing Eve" shows eight episodes priced $2.99, eight "Closer Look" episodes saying "Season Only," and a free "trailer," *id.* at ¶ 4, Ex. 2;

- ▪ The content listing for "Westworld" shows 10 episodes priced $3.99, 10 "Creating Westworld's Reality" episodes saying "Season Only," three "Bring Yourself Back Online" episodes saying "Season Only," and two free episodes titled "The Buzz: On the Red Carpet" and "Return to Westworld," *id.* at ¶ 5, Ex. 3; and

- ▪ The content listing for "The Americans" shows 10 episodes priced $2.99 and one free "Sneak Peak," *id.* at ¶ 6, Ex. 4.

/////

8

### 2.   The Warranty Disclaimer in the Agreement.

All transactions through iTunes, including Zaragoza's purchase of "Genius: Einstein" and Coyle's purchase of "Killing Eve," are governed by the Apple Media Services Terms and Conditions (the "Agreement"). *See* Nguyen Decl. ¶¶ 7-8, Ex. 5. The Agreement is displayed to Apple customers before they can use and make purchases from iTunes. *Id.* at ¶ 8. The Agreement provides that "[t]hese terms and conditions create a contract between you and Apple (the 'Agreement'). Please read the Agreement carefully. To confirm your understanding and acceptance of the Agreement, click 'Agree.'" Ex. 5 to Nguyen Decl. at 1. Further, "[t]his Agreement governs your use of Apple's services [such as iTunes] ('Services'), through which you can buy, get, license, rent or subscribe to media, apps ('Apps'), and other in-app services ('Content')." *Id.*

The Agreement contains a "DISCLAIMER OF WARRANTIES; LIABILITY LIMITATION" in stark, all-capital letters, *see id.* at 10:

> THE SERVICES AND ALL CONTENT DELIVERED TO YOU THROUGH THE SERVICES ARE (EXCEPT AS EXPRESSLY STATED BY APPLE) PROVIDED "AS IS" AND "AS AVAILABLE" FOR YOUR USE, WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NONINFRINGEMENT.

*Id.*

## III.   ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3))

1.   Under the CLRA, UCL, FAL, and N.Y. G.B.L., have the plaintiffs adequately pleaded that the whole menu would mislead and deceive a "reasonable consumer" to believe that there was a representation regarding a specified number of "standard, plot-based episodes" and "significant discount"?

2.   Are iTunes transactions involving television content "goods or services" within the scope of the CLRA or "goods" within the scope of the UCC?

3.   Under the UCC as it applies to warranties, is the word "Episode" within the context of the full menu a specific and unequivocal representation of fact as to a specified number of "standard, plot-based episodes" and "significant discount," and, if so, was that warranty breached?

4.      Are the plaintiffs' claims for breach of the implied warranty of merchantability barred by the Agreement's disclaimer?

5.      Are there sufficient well-pleaded facts to support the claim that Apple knowingly misrepresented the number of "standard, plot-based episodes" and "significant discount" to the plaintiffs, and that the plaintiffs justifiably relied on the alleged representation?

6.      Are the plaintiffs' claims for restitution barred by the existence of the Agreement?

7.      Have the plaintiffs pleaded an injury-in-fact that satisfies the elements of their claims and the standing requirement under Article III of the United States Constitution?

## IV.      LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Legally conclusory statements, not supported by actual factual allegations, should not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A court also should not accept the truth of "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Instead, the complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## V.      ARGUMENT

### A.      The CLRA, UCL, FAL, and Common Law Fraud Claims Fail As a Matter of Law.

The plaintiffs' claims under the CLRA, UCL, FAL and common law fraud all rely upon the same alleged predicate wrongdoing, namely that Apple's display of the word "Episodes" on

10

the menus was fraudulent, deceptive, and misleading. *See* Compl. ¶¶ 62-64, 74, 77, 80, 87, 110. Although the plaintiffs allege violations of all three prongs of the UCL (unlawful, unfair, and fraudulent conduct), the same alleged deceit is the predicate for each prong. *See id.* at ¶ 74 (Apple "violated the 'unlawful' prong of the UCL because they violated the FAL and the CLRA"); ¶ 77 (Apple's conduct was "unfair" because it was "misleading, unfair, unlawful," and "deceiving"). "Thus, the 'unlawful' claim under the UCL is entirely derivative of the other consumer protection claims" as is the "unfair" claim. *Smith*, 2014 WL 989742, at *9-10. Accordingly, the "unlawful" and "unfair" claims are subject to dismissal for the same reasons as the "fraudulent" claim. *See id.*; *see also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (dismissing CLRA, UCL, and FAL claims); *Williamson v. Apple Inc.*, No. 11 cv 377, 2012 WL 3835104, at *9 (N.D. Cal. Sept. 4, 2012) (same). For the reasons set forth below, the conduct alleged in the Complaint is not "unlawful," "unfair," or "fraudulent."[4]

### 1.    The Menus Would Not Mislead or Deceive a Reasonable Consumer.

"A plaintiff alleging fraudulent misrepresentations under the UCL, FAL, and CLRA must allege" exposure to a deceptive representation. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 989 (S.D. Cal. 2014). "Courts often analyze these statutes together because they share similar attributes." *Id.* at 985; *see Hadley*, 243 F. Supp. 3d at 1089 (similar). "Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is 'likely to deceive' a 'reasonable consumer.'" *Hadley*, 243 F. Supp. 3d at 1089.

To satisfy this standard, the plaintiffs must allege "'more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* at 1092 (quoting *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d

---

[4] Regardless of the label assigned to a cause of action, all claims that "sound in fraud" are "subject to the heightened pleading requirement of Rule 9(b)." *Smith v. LG Elecs. USA, Inc.*, No. 13 cv 4361, 2014 WL 989742, at *11 (N.D. Cal. Mar. 11, 2014) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) and *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)); *accord Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 978 (N.D. Cal. 2016) (dismissing CLRA and UCL claims under Rule 9(b), "including claims under all three prongs of the UCL").

811, 828 (N.D. Cal. 2013)). "'[A] representation *does not become* "false and deceptive" merely because it will be *unreasonably misunderstood* by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.'" *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1089 (N.D. Cal. 2018) (emphasis added) (quoting *Davis*, 691 F. 3d at 1162). For example, a complaint cannot interpret a representation in "an unreasonable manner" by focusing on one word "to the exclusion of everything else." *Bobo v. Optimum Nutrition, Inc.*, No. 14 cv 2408, 2015 WL 13102417, at *4-5 (S.D. Cal. Sept. 11, 2015) (finding that any ambiguity was dispelled by the advertisement as a whole). A complaint also cannot rely on an inference that is "unreasonable" or "dispelled" upon examination of the "entire" or "whole" context of the statement. *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995). Where "'a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate.'" *Hadley*, 243 F. Supp. 3d at 1094 (quoting *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012)). The plaintiffs' interpretation of the menus at issue cannot satisfy the "reasonable consumer" standard.

Here, the plaintiffs' allegations of deceit throughout the Complaint rely on two conclusions that they supposedly drew upon viewing the menus. First, the plaintiffs isolate the word "Episode" on the menus and assert that it was reasonable for the plaintiffs to interpret that term to mean "plot-based episodes." Second, the plaintiffs assert that they believed the purchase of a Season Pass offered a "significant discount." However, these phrases that are so critical to the plaintiffs' claims are not found anywhere on the menus, and the inferences that the plaintiffs allegedly drew are implausible on their face. The full context of the menus demonstrates that the plaintiffs cannot reasonably equate "Episode" with "standard, plot-based episode." The "Episode" display appears in a shaded banner at the bottom of the menus in a way that visually distinguishes it from other parts of the menus. In the same shaded banner, immediately below the word "Episodes," the menus list the name, sequencing, and price for every episode included with the season (both so-called "plot-based" content and bonus content). Ex. 1-3 to Nguyen Decl.

An Apple TV user can easily scroll through the full episode list before making any purchase, and reasonably would be expected to do so either if the nature of the content were

important, or to calculate the specific discount of buying a Season Pass rather than each episode at its listed price. For this reason, the plaintiffs inadvertently plead their way out of a claim when they identify the contents of shows they have not even purchased. For example, the plaintiffs describe the "25 Episodes" in a screenshot of season two of "Westworld" as containing "10 standard, plot-based episodes" and 15 "promotional clips." *See* Compl. ¶ 27; *see also id.* at ¶ 28 ("The Americans"). The plaintiffs' allegations conclusively demonstrate that in the context of the entire menu, consumers (including the plaintiffs) have complete information about the number and pricing of episodes before making any purchase. Thus, any claim of deceit is belied by the plaintiffs' own allegations in their Complaint.

The Ninth Circuit has affirmed dismissal of similar claims where a plaintiff failed to scroll through the information provided. *See Davis*, 691 F.3d at 1162, 1171 (affirming dismissal of UCL and FAL claims). In *Davis*, the plaintiff alleged that he had signed up for a credit card based on his belief that there would be no annual fee. *See* 691 F.3d at 1157. Relying on a disclosure appearing in a "scrolling rectangular text box" on the defendant's webpage, *id.* at 1158, the Ninth Circuit held that "no reasonable consumer could have believed" there would be no annual fee. *Id.* at 1162. The court specifically rejected an argument that "only part of the contents . . . were visible without scrolling down," and that the disclosure was near the bottom. *Id.* at 1160. Here, the plaintiffs had even more information than the plaintiff in *Davis* because part of the episode list was visible *directly beneath* the allegedly misleading statement, and it was apparent that additional information was available by scrolling. The plaintiffs cannot avoid the information that is available by scrolling through the menus to later attempt to argue the menus were misleading.[5]

The presentation of complete, accurate information about episodes "directly below" and "in the same bordered area" as the allegedly misleading statement defeats the plaintiffs' claim that

---

[5] This Court's decision in *Goldman v. Bayer AG*, No. 17 cv 647, 2017 WL 3168525 (N.D. Cal. July 26, 2018) applied similar reasoning to a "front-back" label case involving One-A-Day vitamins. Notwithstanding the Ninth Circuit's remand to reconsider the *Goldman* ruling in light of the decision in *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018), *see* 742 F. App'x 325, this Court's common sense approach in *Goldman* that a consumer cannot ignore readily available information applies with greater force in a "scrolling" case.

13

1  they were deceived. *See Hadley*, 243 F. Supp. 3d at 1101 (dismissing CLRA, UCL, and FAL

2  claims); *see also Freeman*, 68 F.3d at 289 (dismissing CLRA, UCL, and FAL claims where

3  "qualifying language appear[ed] immediately next to the representations . . . and no reasonable

4  reader could ignore it"); *Macaspac v. Henkel Corp.*, No. 17 cv 1755, 2018 WL 2539595, at *5

5  (S.D. Cal. June 4, 2018) (dismissing CLRA, UCL, and FAL claims based on allegedly misleading

6  statements about the amount of product where "a consumer can fully see the [package's]

7  contents . . . without altering the packaging or damaging the product"); *Castagnola v. Hewlett-*

8  *Packard Co.*, No. 11 cv 05772, 2012 WL 2159385, at *10 (N.D. Cal. May 26, 2015) (dismissing

9  UCL and CLRA claims because a "consumer cannot decline to read clear and understandable"

10  information "provided on the same webpage in close proximity") (quotation omitted); *Baxter v.*

11  *Intelius, Inc.*, No. 09 cv 1031, 2010 WL 3791487, at *6 (C.D. Cal. Sept. 16, 2010) (dismissing

12  CLRA, UCL, and FAL claims because the "full disclosure and 'true facts'" were on the webpage

13  that formed the basis of the claims, and the plaintiff's failure to read them is not a fraudulent

14  business practice).

15       Even if the information in the menus did not dispel the plaintiffs' alleged confusion, the

16  plaintiffs fail to allege any basis for interpreting the word "Episodes" to mean "plot-based

17  episodes" or to imply a specific discount percentage for buying a season package. The plaintiffs do

18  not (and cannot) allege that the words "plot-based" or "discount" (let alone "significant

19  discount"[6]) appear anywhere on the menus, or that the way in which the general word "Episode"

20  was displayed gave it the meaning they allege. *See Forouzesh v. Starbucks Corp.*, No. 16 cv 3830,

21  2016 WL 4443203, at *3 (C.D. Cal. Aug. 19, 2016) (dismissing CLRA, UCL, and FAL claims

22  where the menu did not "explicitly state" the alleged misrepresentation and other information

---

[6] Contrary to the assumption throughout the Complaint, the plaintiffs could not have had any particular discount in mind. As purchasers of a Season Pass for an incomplete season, both plaintiffs expected to receive an unspecified number of additional, unaired episodes in the future at the time of their purchase, making an exact calculation impossible. For this reason, the plaintiffs do not allege that they calculated a discount rate (*e.g.*, 20%) in making their decision to buy the Season Pass. The Complaint demonstrates that Zaragoza received a $4.91 discount and Coyle received a $3.93 discount with the Season Pass. By implication, the plaintiffs must mean that the discounts they received were just not "significant" enough—an implausible conclusion.

1   available to plaintiff cast doubt on his interpretation); *Victor v. R.C. Bigelow, Inc.*, No. 13 cv 2976,

2   2014 WL 12642194, at *5 (N.D. Cal. July 18, 2014) (dismissing CLRA, UCL, and FAL claims

3   based on the generic term "antioxidant" where nothing "about the statement itself" would indicate

4   a *particular type* of antioxidant); *see also San Miguel*, 317 F. Supp. 3d at 1089 (dismissing CLRA,

5   UCL, and FAL claims where the plaintiff failed to support his conclusion that references to ink

6   cartridges on a printer box were to generic parts rather than the manufacturer's parts); *Dickey v.*

7   *Advanced Micro Devices, Inc.*, No. 15 cv 4922, 2016 WL 6427852, at *8-9 (N.D. Cal. Oct. 31,

8   2016) (dismissing CLRA, UCL, and FAL claims where the plaintiff failed to allege a sufficient

9   basis for inferring that the term "processing core" was commonly understood to mean

10   "independent" processing core).

11        The Complaint does not state a plausible claim that a reasonable Apple TV user would be

12   deceived by the menus. The CLRA, UCL, FAL, and common law fraud claims should be

13   dismissed.

14             **2.**      **The CLRA Does Not Apply to the Plaintiffs' Transactions.**

15        The CLRA claim should be dismissed for an independent reason: the CLRA does not

16   apply to this transaction. In an attempt to shoehorn their transactions into the CLRA, the plaintiffs

17   allege that a Season Pass is a "service." Compl. ¶ 61. This conclusory allegation, however, should

18   not be accepted as true because it contradicts the Agreement, which states that a Season Pass

19   involves licensing "Content," Ex. 5 to Nguyen Decl. at 1, not purchasing "tangible chattels" (a

20   "good") or "work, labor or services" (a "service"), as required by the CLRA, *see* Cal. Civ. Code

21   § 1761(b), (c) (definitions); *id.* at § 1770. The distinction between "content" and a "good" was

22   grounds for dismissal of a CLRA claim in *Lazebnik v. Apple Inc.*, another case involving iTunes

23   Season Passes. No. 13 cv 4145, 2014 WL 4275008, at *5 (N.D. Cal. Aug. 29, 2014) (dismissing

24   CLRA claim but allowing UCL claim under different facts and alleged representations/omissions

25   related to the splitting of the last season of a television show into two Season Passes). Here, the

26   plaintiffs' mischaracterization of a Season Pass as a "service" should be viewed for what it is—a

27   failed attempt to plead around the holding in *Lazebnik*. Applying a conclusory label does not

28   overcome this Court's sound rationale: licensing and downloading television content through

iTunes is not a transaction that implicates the CLRA because licensing content does not involve the sale or lease of goods or services. *See Lazebnik*, 2014 WL 4275008, at *5; *see also F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010) (finding permanent downloads and ringtones are licenses); *In re iPhone 4S Consumer Litig.*, No. 12 cv 1127, 2013 WL 3829653, at *13 (N.D. Cal. July 23, 2013) (observing that content downloaded to Apple device is not a good or service under the CLRA). Accordingly, the CLRA claim should be dismissed, as well as any derivative claim under the UCL, *see* Compl. ¶ 74.

### B.      The N.Y. G.B.L. §§ 349 and 350 Claims Fail as a Matter of Law.

Coyle's claims under N.Y. G.B.L. §§ 349 and 350 should be dismissed for the same reasons that the CLRA, UCL, and FAL claims fail: the allegations do not pass the "reasonable consumer" test.[7] "A cause of action under [N.Y. G.B.L.] § 349 has three elements (1) 'the challenged act or practice was consumer-oriented'; (2) 'it was misleading in a material way'; and (3) 'the plaintiff suffered injury as a result of the deceptive act.'" *Daniel v. Tootsie Roll Indus., LLC*, No. 17 cv 7541, 2018 WL 3650015, at *11 (S.D.N.Y. Aug. 1, 2018) (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)). Generally, the "standard for recovery under section 350, while specific to false advertising, is otherwise identical to section 349." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018).

"Under New York law, a material misrepresentation is one that is likely to mislead a ***reasonable consumer*** acting reasonably ***under the circumstances***." *Daniel*, 287 F. Supp. 3d at 189 (quotation omitted) (first emphasis added). The Court must "view each allegedly misleading statement in light of its context on the product label or advertisement as a whole. The entire mosaic is viewed rather than each tile separately." *Id.* (quoting *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015)). Further, there is no basis for "[a]ssuming that a reasonable consumer might ignore the evidence plainly before him." *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017); *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 227

---

[7] Coyle brings New York and California claims. Because dismissal is required either way, Apple has not undertaken a choice-of-law analysis; it reserves the right to do so at a later stage, if necessary.

(S.D.N.Y. 2011) ("There can be no claim for deceptive acts or practices, however, when the alleged deceptive practice was fully disclosed.") (quotation omitted).

Again, the menus paired the word "Episode" with an adjacent listing that gave the name, sequencing, and price for every episode. Under the New York statutes, the menus could not have been materially misleading because the plaintiffs were fully informed about what they would receive with the Season Pass. *See, e.g., Bowring v. Sapporo USA, Inc.*, 234 F. Supp. 3d 386, 391-92 (E.D.N.Y. 2017) (dismissing claim that labeling beer "Japanese" implied it was brewed in Japan where the label clearly disclosed that it was imported from Canada); *Wurtzburger v. Kentucky Fried Chicken*, No. 16 cv 8186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (dismissing claim based on inferences from the size of a food container where the defendant accurately stated that the meal included eight pieces of chicken); *Weinstein*, 819 F. Supp. 2d at 229 (finding that statements on a seller's website "belie[d] any claim of deception"); *Egleston v. The Valspar corp.*, No. 15 cv 4130, 2015 WL 6508329, at *7-8 (S.D.N.Y. Oct. 13, 2015) (dismissing § 349 claim on the basis of information that was available to the consumer in the governing shrink wrap agreement).

Additionally, courts applying N.Y. G.B.L. §§ 349 and 350 expect that a reasonable consumer will exercise at least some diligence. For example, one court rejected a plaintiff's claims regarding allegedly misleading packaging because it was possible to "easily calculate the number of candies contained in the Product boxes simply by multiplying the serving size by the number of servings in each box, information displayed in the nutritional facts section on the back of each box." *Daniel v. Tootsie Roll,* 2018 WL 3650015, at *12. The plaintiffs argued that "only an unusually diligent consumer could derive the Product count by multiplying the number of servings by the number of pieces per serving." *Id.* at *13 (quotation omitted). The court disagreed. "The law simply does not provide the level of coddling plaintiffs seek." *Id.* Here, the case for dismissal is even stronger because the menus do not require a mathematical calculation using information from the back of the packaging. The information about the episodes appeared on the face of the menus, directly below the allegedly misleading word "Episodes."

/////

17

In *Manuel v. Pepsi-Cola Co.*, the plaintiff alleged that the word "Diet" in "Diet Pepsi" would cause a reasonable consumer to believe that the drink would "assist in weight loss." No. 17 cv 7955, 2018 WL 2269247, at *8 (S.D.N.Y. May 17, 2018). The court dismissed the claim because "a cause of action for false or misleading conduct cannot rest on an unreasonable reading of label [*sic*] or advertising at issue." *Id.* at *9. The court specifically found that the meaning of the word "Diet" arose from its context, not in a vacuum. "'Diet' immediately precedes 'Pepsi,' and thereby connotes a *relative* health claim . . . reading 'Diet Pepsi' without reference to Pepsi ***deprives the term 'Diet' of its essential referent***." *Id.* at *8 (second emphasis added). Here, too, the plaintiffs strip the "Episodes" display of its essential referent, which includes the complete and accurate list of episodes in the same shaded banner set apart from the rest of the menus.

Coyle's claims under N.Y. G. B.L. §§ 349 and 350 should be dismissed.

**C.**      **The Plaintiffs' Warranty Claims Fail as a Matter of Law.**

The plaintiffs assert claims under Article 2 of the California and New York Uniform Commercial Code (collectively, the "UCC"). The plaintiffs allege that their Season Passes included an express and implied warranty that the number of "plot-based episodes" in the Season Pass was equal to the number displayed as "## Episodes." Compl. ¶¶ 94, 104.

The warranty claims fail because the UCC does not apply to the plaintiffs' transactions. Neither the menus nor the Agreement contain the express warranty that the plaintiffs allege and, in any event, Apple disclaimed such warranties. Moreover, when, as here, "an implied warranty of merchantability cause of action is based solely on whether the product in dispute conforms to the promises or affirmations of fact on the packaging . . . the implied warranty of merchantability claim rises and falls with [the] express warranty claims." *Hadley*, 243 F. Supp. 3d at 1106.

**1.**      **The UCC Is Inapplicable Because the Plaintiffs Did Not Buy "Goods."**

It is axiomatic that Article 2 of the UCC applies only to the sale of goods, not other types of transactions. *Joe Hand Promotions, Inc. v. Bragg*, No. 13 cv 2725, 2016 WL 773223, at *4 (S.D. Cal. Feb. 29, 2016); *Amendola v. Basement Waterproofing Co. of Flushing, Inc.*, 610 N.Y.S.2d 313, 313 (N.Y. App. Div. 1994). A "good" is defined in the UCC as a thing "which [is] movable at the time of identification to the contract for sale." Cal. Com. Code § 2105; N.Y.

1    U.C.C. § 2-105. The plaintiffs' claims here do not involve the sale of goods, but rather access to

2    television content through iTunes. *See Joe Hand*, 2016 WL 773223, at *4 (holding that the

3    transmission of television programming was not a good); *Wall Street Network, Ltd. v. New York*

4    *Times Co.*, 164 Cal. App. 4th 1171, 1187 (2008) (holding that UCC did not apply to arrangement

5    involving digital content) (citing *Kaplan v. Cablevision of Pa., Inc.*, 671 A.2d 716 (Pa. Super. Ct.

6    1996) (holding UCC does not apply to contract for television programs via cable)); *see also*

7    *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 432 (S.D.N.Y. 1996) ("Because the

8    predominant feature of the [agreement] was a transfer of intellectual property rights, the agreement

9    is not subject" to the UCC.). In fact the plaintiffs themselves allege that the "Season Features are

10   'services,'" not goods. Compl. ¶ 61. While the television shows that the plaintiffs purchased are

11   "content," by alleging (albeit incorrectly) that they purchased "Services" (*id*. ¶ 61), the plaintiffs

12   certainly agree that they are ***not*** "goods." For this reason alone, the Court should dismiss the two

13   breach-of-warranty claims, with prejudice. *See Joe Hand*, 2016 WL 773223, at *4 (dismissing

14   without leave to amend).

15                            **2.      The Plaintiffs Cannot Allege an Express or Implied Warranty.**

16       Assuming *arguendo* that the plaintiffs' license of television content was considered a

17   purchase of "goods," the plaintiffs' claims should be dismissed because: (1) the term "Episode" is

18   not an actionable warranty, and in any event was not breached; and (2) to the extent the Court

19   finds a warranty exists in isolation (it should not), the Agreement effectively disclaimed all

20   warranties.

21                            **a.      The Term "Episode" Is Not an Express Warranty.**

22       The term "Episode" viewed in isolation, as it is by the plaintiffs, is too general and

23   equivocal to support the warranty claims the plaintiffs assert. A warranty requires a "specific and

24   unequivocal written statement" that serves as the basis of the parties' bargain. *Yastrab*, 173 F.

25   Supp. 3d at 982 (dismissing claims); *Simmons v. Washing Equip. Techs.*, 912 N.Y.S.2d 360, 361

26   (N.Y. App. Div. 2010) (finding claim defective where the alleged warranty was of "such a general

27   nature that a reasonable consumer would not rely on it as a statement of fact"). A warranty is

28   contractual in nature, and it is not enough for the plaintiffs to "blindly surmise" that the word

                                                       19

"Episode" was a promise. *See Cruz v. Anheuser-Busch, LLC*, No. 14 cv 9670, 2015 WL 3561536, at *9 (C.D. Cal. June 3, 2015) (dismissing warranty claims along with UCL, FAL, and CLRA claims where the "Plaintiffs' allegations simply blindly surmise . . . a promise . . . based on the term 'light.' That is not a promise, and even if it was, Plaintiffs fail to properly allege how this promise was breached considering the accurate disclosure of the Rita Products' nutrient contents.").

As with the plaintiffs' fraud claims, the plaintiffs cannot allege that Apple made an affirmation of fact that the displayed number of episodes (*e.g.* "11 Episodes") meant "11 standard, plot-based episodes" or that the plaintiffs would receive a specific level of discount by purchasing a Season Pass. Thus, the reasons that compel dismissal of the statutory fraud claims compel dismissal of the express warranty claim as well. *Dickey*, 2016 WL 6427852, at *9 (dismissing warranty claim in addition to statutory fraud claims because the plaintiff failed to allege facts showing a common understanding that "processing core" meant an "independent" processing core); *Forouzesh*, 2016 WL 4443203, at *4 (dismissing warranty claim where the plaintiff failed to attribute a specific statement of "fact or promise" to the defendant other than a "strained interpretation of Defendant's menu descriptions"); *Bobo*, 2015 WL 13102417, at *6 (dismissing warranty claim on the same grounds as CLRA, UCL, and FAL claims); *Solak v. Hain Celestial Grp., Inc.*, No. 17 cv 704, 2018 WL 1870474, at *10-11 (N.D.N.Y. Apr. 17, 2018) (dismissing warranty claims based on the same representations forming the basis of statutory fraud claims).

Moreover, the plaintiffs mischaracterize the information provided to them. The plaintiffs cannot pick-and-choose from the defendant's statements to reach inferences inconsistent with all of the information provided as part of the transaction. Even with a warranty claim, the term "Episodes" takes its meaning from the surrounding context regarding the episodes. *See Solak*, 2018 WL 1870474, at *10 (applying California and New York law) (rejecting interpretation of part of a product's packaging based on other portions which dispelled the plaintiff's inferences); *Broomfield v. Craft Brew Alliance, Inc.*, No. 17 cv 1027, 2017 WL 3838453, at *10 (N.D. Cal. Sept. 1, 2017) (dismissing claim based on "truthful statement(s)" where, even if they "may lead consumers to draw inferences," did not constitute an "express promise" as alleged by plaintiffs).

20

1   Additionally the detailed information provided about the episodes, immediately under the word

2   "Episode," displaces any inference that the plaintiffs may have drawn from the "inconsistent . . .

3   general language" "Episode." Cal. Com. Code § 2317; N.Y. U.C.C. § 2-317; *see also Nelson v.*

4   *MillerCoors, LLC*, 246 F. Supp. 3d 666, 678 (E.D.N.Y. 2017) (rejecting inferences the plaintiff

5   drew from certain branding that were contrary to a truthful, specific disclosure on the label).

6         The plaintiffs received the complete season of their selected television shows, as

7   specifically identified in the menus, and at the stated price. Accordingly, even if there were a

8   warranty, the plaintiffs have not pleaded a plausible breach, and their breach-of-warranty claims

9   fail.

10                **b.**       **The Agreement Disclaimed Any and All Alleged Warranties.**

11         Section 2-316 of the UCC allows sellers to disclaim express and implied warranties,

12   including the implied warranty of merchantability. Cal. Com. Code § 2316; N.Y. U.C.C. § 2-316.

13   "To exclude the implied warranty of merchantability, the language disclaiming the warranty must

14   use the word 'merchantability,' and if the exclusion is in writing, it must be 'conspicuous.'"

15   *Hollman v. Taser Int'l Inc.*, 928 F. Supp. 2d 657, 682 (E.D.N.Y. 2013) (quotation omitted); *see*

16   *also Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014). Moreover, the expression

17   "as is" "'calls the buyer's attention to the exclusion of warranties.'" *Minkler*, 65 F. Supp. 3d at 819

18   (quoting Cal. Com. Code § 2316(3)(a)); *see also* N.Y. U.C.C. § 2-316(3)(a).

19         The "DISCLAIMER OF WARRANTIES" in the Agreement is effective, enforceable, and

20   defeats the plaintiffs' warranty claims because it (1) expressly disclaims "WARRANTIES OF

21   ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING ALL IMPLIED WARRANTIES

22   OF MERCHANTABILITY" and (2) uses the expression "AS IS." Ex. 5 to Nguyen Decl.; *see*

23   *Hollman*, 928 F. Supp. 2d at 682 (enforcing warranty disclaimer that was "in a larger font and in

24   all capital letters"). Warranty disclaimers in this form are routinely enforced to dismiss breach-of-

25   warranty claims. *Davidson v. Apple Inc.*, No. 16 cv 4942, 2017 WL 976048, at *14 (N.D. Cal.

26   Mar. 14, 2017) ("The disclaimer is preceded by a heading and . . . the disclaimer is in all capital

27   letters."); *Minkler*, 65 F. Supp. 3d at 819 ("The disclaimer is in writing, conspicuous, and

28   mentions merchantability."); *Shema Kolainu-Hear Our Voices v. Providersoft, LLC*, 832 F. Supp.

21

1   2d 194, 200 (E.D.N.Y. 2010) (enforcing disclaimer of warranty that was in all capital letters, was

2   in a separate block paragraph, and contained the words "AS IS"). In light of the disclaimers in the

3   Agreement, the plaintiffs cannot sustain a warranty claim.

4   **D.      The Plaintiffs' Common Law Fraud Claims Fail as a Matter of Law.**

5   The common law fraud claims fail for the same and additional reasons as the statutory

6   fraud claims. The elements of a fraud by misrepresentation cause of action are "(a)

7   misrepresentation . . . ; (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce

8   reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns*, 567 F.3d 1120 at 1126

9   (quotation omitted); *see also Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976,

10  979 (N.Y. 2009). The plaintiffs' allegations here fall far short of pleading a plausible claim of

11  fraud against Apple.

12  First, the plaintiffs have not identified any false statement by Apple. Second, the plaintiffs

13  fail to allege "facts supporting a reasonable inference that Apple had knowledge of an alleged

14  misrepresentation or an intent to defraud, as required by Rule 9(b)." *Herskowitz v. Apple Inc.*, 940

15  F. Supp. 2d 1131, 1148 (N.D. Cal. 2013) (dismissing common law fraud claim based on

16  "conclusory allegations" and "unwarranted inferences" of scienter and intent); *Tae Hee v. Toyota*

17  *Motor Sales, USA, Inc.*, 992 F. Supp. 2d 962, 977 (C.D. Cal. 2014) (same). The plaintiffs do not

18  allege facts that explain Apple's knowledge, intent, or motivation to misrepresent the number of

19  episodes included with the Season Passes the plaintiffs purchased, especially where the plaintiffs'

20  only options were to purchase episodes individually for more or to purchase the Season Pass. The

21  plaintiffs wrongly assume that Apple knew that the plaintiffs would attribute a meaning to

22  "Episodes" that is inconsistent with the word's placement and the context of the entire menus.

23  Third, the plaintiffs fail to satisfy the justifiable reliance element of a fraud claim. *Riggins*

24  *v. Bank of Am., NA*, No. 12 cv 33, 2013 WL 319285, at *5 (C.D. Cal. Jan. 24, 2013). "[A] party

25  cannot claim reliance on a misrepresentation when he or she could have discovered the truth with

26  due diligence." *Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F. Supp. 3d 379, 393

27  (S.D.N.Y. 2014); *Daniel*, 287 F. Supp. 3d at 199; *see also OCM Principal Opportunities Fund v.*

28  *CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 865 (2007) (holding that a plaintiff's reliance

DEFENDANT'S MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

1  is not justified where the representations have been "shown by facts within his observation to be

2  so patently and obviously false that he must have closed his eyes to avoid discovery of the truth")

3  (quotation omitted). "Only when matters are held to be peculiarly within defendant's knowledge is

4  it said that plaintiff may rely without prosecuting an investigation because the plaintiff would have

5  no independent means of ascertaining the truth." *Transnat'l Mgmt. Sys. II, LLC v. Carcione*, No.

6  14 cv 2151, 2016 WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016) (quotations and citations omitted);

7  *see also Daniels*, 2018 WL 3650015, at *15 (plaintiff must make use of available means of

8  investigation). Here, the plaintiffs ignored the information, fully and accurately disclosed on the

9  menus, regarding the name, sequencing, and price of every episode included with the Season Pass.

10  The plaintiffs are, therefore, unable to plead that they justifiably relied on an allegedly false

11  statement. For these reasons, the Court should dismiss the common law fraud claims.

12  **E.      The Plaintiffs Cannot Assert a Quasi-Contract Claim for Restitution.**

13      The plaintiffs' unjust enrichment claims fail as a matter of law for two reasons. First, the

14  Agreement is an express contract that "governs" the plaintiffs' license of Content. Ex. 5 to Nguyen

15  Decl. at 1. The plaintiffs' unjust enrichment claim arises from the same subject matter (purchases

16  of Content through iTunes) and is therefore barred by the existence of the express contract. *See*

17  *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016) ("[A]s a matter of law, a

18  quasi-contract action for unjust enrichment does not lie where, as here, express binding

19  agreements exist and define the parties' rights."); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,

20  96 F.3d 1151, 1167 (9th Cir. 1996) ("Under both California and New York law, unjust enrichment

21  is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists

22  defining the rights of the parties."); *Shin v. Washington Mut. Bank, FA*, No. 18 cv 2143, 2018 WL

23  4491185, at *10 (N.D. Cal. Sept. 19, 2018) (citing *Lance Camper Mfg. Corp. v. Repub. Indem.*

24  *Co.*, 44 Cal. App. 4th 194, 203 (1996)); *Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F.

25  App'x 153, 157 (2d Cir. 2012) ("Under New York law, quasi-contractual . . . relief is unavailable

26  where [as here] an express contract covers the subject matter.") (quotation omitted).

27      Second, the plaintiffs cannot allege "a failure to make restitution under the circumstances

28  where it is equitable to do so." *Shin*, 2018 WL 4491185, at *10 (quoting *Melchior v. New Line*

23

*Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003)); *see also BAT, LLC v. TD Bank, NA*, No. 15 cv 5839, 2018 WL 4693644, at *9 (E.D.N.Y. Sept. 28, 2018) ("[N]owhere does the Bank explain how BAT was enriched, how the alleged enrichment came at the Bank's expense, or why this alleged enrichment was inequitable.") (quotation omitted); *Washington v. Kellwood Co.*, No. 05 cv 10034, 2009 WL 855652, at * (S.D.N.Y. Mar. 24, 2009) (same). Here, each plaintiff got what he or she bargained for: a Season Pass to gain access to "all current and future episodes for" "Genius: Einstein" (Zaragoza) and "Killing Eve" (Coyle). Each plaintiff also received a discount over what he or she would have paid to buy every episode of the season individually. *See* Nguyen Decl. ¶¶ 3-6, Ex. 1-4. Neither plaintiff alleges that he or she attempted to return the television content unwatched for a refund, nor that it was possible to buy the shows more cheaply elsewhere. There is no equitable basis for the plaintiffs to invoke restitution under the circumstances. *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 n.5 (2008) (dismissing claim for restitution where the plaintiff failed to allege that there were other, cheaper options); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011) ("Plaintiffs paid their purchase prices and obtained their products" and they "do not seek rescission.") (quotation omitted).

### F.      The Plaintiffs Have Not Suffered Any Actionable Injury.

Actual harm is an element required to sustain each of the plaintiffs' statutory and common law fraud causes of action. *See* Cal Bus. & Prof. Code §§ 17204, 17535; *Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 5th 634, 641 (2009) ("[T]o bring a CLRA action, not only must a customer be exposed to an unlawful practice, but some kind of damage must result."); *Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 979 (C.D. Cal. 2006) ("Damages or harm are an element of all three types of prohibited practices [in the UCL]."); *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *11; *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014) (plaintiff must allege they "suffered injury as [the] result of the deceptive act" under N.Y. G.B.L. § 350); *Hines v. Overstock.com, Inc.*, No. 09 cv 991, 2013 WL 4495667, at *9 (E.D.N.Y. Aug. 19, 2013) ("To successfully assert a claim under Section 349, a plaintiff must allege . . . plaintiff suffered an injury as a result of the allegedly deceptive act or practice.") (quotation omitted); *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (2004). Moreover, the

24

absence of an injury-in-fact is a basis under Fed. R. Civ. P. 12(b)(1) to dismiss all claims in the Complaint for lack of Article III standing. *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 887 (N.D. Cal. 2016).

Seizing upon cases that have found statutory and Article III standing based on the allegation that plaintiffs "paid more" or "would not have bought the product," the plaintiffs vaguely allege that they did not receive an unspecified, but more "significant," discount on their purchases of Season Passes, and accordingly they would not have purchased the Season Passes or would have paid less. Compl. ¶¶ 5-6.  The plaintiffs' allegation is implausible on its face. Nothing in the menus promises a discount. Moreover, they have not alleged any option that would have saved them more than they already saved—in fact, the alternative purchasing option they identify (*i.e.*, buying the episodes individually) would have cost *more*. The following chart illustrates the plaintiffs' savings:

|  | Show | Episodes and Prices | Total | Season Pass Cost | Discount |
|---|---|---|---|---|---|
| Zaragoza | "Genius: Einstein" | 10 at $2.99<br>12 at no charge | $29.90 | $24.99 | $4.91 |
| Coyle | "Killing Eve" | 8 at $2.99<br>9 at no charge | $23.92 | $19.99 | $3.93 |

Thus, even as the plaintiffs have framed the issue (a vaguely promised discount on a season's worth of television episodes), they have suffered no injury-in-fact or damages.  This is an independent reason to dismiss the plaintiffs' CLRA, UCL, FAL, N.Y. G.B.L., and fraud claims.

## VI.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court enter an order granting this motion and dismissing the plaintiffs' Class Action Complaint and each of the plaintiffs' claims therein, with prejudice.

Dated:  December 13, 2018               DLA PIPER LLP (US)


By: /s/ *Isabelle L. Ord*
ISABELLE ORD
Attorneys for Defendant
APPLE INC.

EAST\162486634.

25