ISABELLE ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
CHELSEA N. MUTUAL (Bar No. 299656)
chelsea.mutual@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

RAJ N. SHAH (admitted *pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (admitted *pro hac vice*)
eric.roberts@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.251.5714

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| Gabriella Zaragoza and Joseph Coyle, individually and on behalf of all others similarly situated,, <br><br>                    Plaintiffs, <br><br>      v. <br><br> Apple Inc., <br><br>                    Defendant. | CASE NO. 4:18-CV-06139-PJH <br><br> **DEFENDANT APPLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** <br><br> **(FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6))** <br><br> Date:     February 13, 2019 <br> Time:    9:00 a.m. <br> Room:   3 <br> Judge:   Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

**Page**

**I.**   INTRODUCTION ........................................................................................................ 1

**II.**   ARGUMENT ............................................................................................................. 3

    A.   The CLRA, UCL, FAL, and Fraud Claims Fail as a Matter of Law .................... 3

        1.   The Menus Do Not Mislead or Deceive a Reasonable Consumer. ........... 3

        2.   The CLRA Does Not Apply to the Plaintiffs' Transactions. .................... 7

    B.   The N.Y. G.B.L. §§ 349 and 350 Claims Fail as a Matter of Law. ...................... 8

    C.   The Plaintiffs' Warranty Claims Fail as a Matter of Law. ..................................... 9

        1.   The UCC Is Inapplicable Because the Plaintiffs Did Not Buy "Goods." ................................................................................................... 9

        2.   The Plaintiffs Cannot Allege an Express or Implied Warranty. ............. 10

    D.   The Plaintiffs' Common Law Fraud Claims Fail as a Matter of Law .................. 13

    E.   The Plaintiffs Cannot Assert a Quasi-Contract Claim for Restitution. ................ 14

    F.   The Plaintiffs Have Not Suffered Any Actionable Injury .................................... 14

**III.**   CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arroyo v. TP-Link USA Corp.*,
No. 14 cv 4999, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) ................................13

*Astiana v. Ben & Jerry's Homemade, Inc.*,
No. 10 cv 4387, 2011 WL 211796 (N.D. Cal. May 26, 2011) ...............................13

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ...............................................................................14

*Atik v. Welch Foods, Inc.*,
No. 15 cv 5405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) ...............................5

*Baxter v. Intelius, Inc.*,
No. 09 cv 1031, 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) ...............................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................9

*Brady v. Bayer Corp.*,
26 Cal. App. 5th 1156 (2018) ..............................................................................11

*Brenner v. Procter & Gamble Co.*,
No. 16 cv 1093, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016) ...............................5

*Buonasera v. Honest Co., Inc.*,
208 F. Supp. 3d 555 (S.D.N.Y. 2016) ..................................................................10

*Campbell v. Freshbev LLC*,
322 F. Supp. 3d 330 (E.D.N.Y. 2018) ...................................................................5

*Castagnola v. Hewlett-Packard Co.*,
No. 11 cv 5772, 2012 WL 2159385 (N.D. Cal. May 26, 2015) ...............................6

*Chester v. TJX Cos., Inc.*,
No. 15 cv 1437, 2016 WL 4414768 (C.D. Cal. Aug. 18, 2016) ...............................5

*Cruz v. Anheuser-Busch, LLC*,
No. 14 cv 09670, 2015 WL 3651536 (C.D. Cal. June 3, 2015) ...............................7

*Daniel v. Mondelez Int'l, Inc.*,
287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...................................................................6

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ......................................................................6, 13, 14

ii

*Delman v. J. Crew Grp., Inc.*,
  No. 16 cv 9219, 2017 WL 3048657 (C.D. Cal. May 15, 2017) ...............................................4, 5

*Dickey v. Advanced Micro Devices, Inc.*,
  No. 15 cv 4922, 2016 WL 6427852 (N.D. Cal. Oct. 31, 2016) ...............................................11

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ...............................................................................................4

*Elkind v. Revlon Consumer Prods. Corp.*,
  No. 14 cv 2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) ...............................................14

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ...............................................................................................4

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ...............................................................................................5

*Gregorio v. Clorox Co.*,
  No. 17 cv 3824, 2018 WL 732673 (N.D. Cal. Feb. 6, 2018) .................................................5

*Gross v. Symantec Corp.*,
  No. 12 cv 154, 2012 WL 3116158 (N.D. Cal. July 31, 2012) ...............................................12

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................................10, 12

*Haskins v. Symantec Corp.*,
  No. 13 cv 1834, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013)...............................................8

*Hughes v. Ester C Co.*,
  330 F. Supp. 3d 862 (E.D.N.Y. 2018)...............................................................................7

*In re Google Phone Litig.*,
  No. 10 cv 1177, 2012 WL 3155571 (N.D. Cal. Aug. 2, 2015) ...............................................12

*In re Nexus 6P Prods. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) ...............................................................................12

*In re NJOY, Inc. Consumer Class Action Litig.*,
  No. 14 cv 428, 2015 WL 12732461 (C.D. Cal. May 27, 2015) .................................................5

*In re Pilgrim's Pride Corp.*,
  421 B.R. 231 (N.D. Tex. 2009)...........................................................................................10

*Izquierdo v. Mondelez Int'l, Inc.*,
  No. 116 cv 4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)...............................................6

*Lazebnik v. Apple Inc.*,
   No. 13 cv 4145, 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) .................................8

*Mattingly v. Hughes Elecs. Corp.*,
   107 F. Supp. 2d 694 (D. Md. 2000) (*dictum*) ...........................................................10

*Minkler v. Apple Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) .......................................................................12

*Morrison v. Ross Stores, Inc.*,
   No. 18 cv 2671, 2018 WL 5982006 (N.D. Cal. Nov. 14, 2018) ...............................9

*Parker v. J.M. Smucker Co.*,
   No. 13 cv 690, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013) ...............................10

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998)...................................................................................11

*Perrine v. Sega of America, Inc.*,
   13 cv 1962, 2013 WL 6328489 (N.D. Cal. Oct. 3, 2013) .........................................8

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016) ....................................................................8

*Schneider v. California Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998)...........................................................................8, 10

*Singleton v. Fifth Generation, Inc.*,
   No. 15 cv 474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ....................................5

*Sperling v. Stein Mart, Inc.*,
   No. 15 cv 1411, 2016 WL 11265686 (C.D. Cal. Mar. 15, 2016)..............................5

*Swingless Golf Club Corp. v. Taylor*,
   679 F. Supp. 2d 1060 (N.D. Cal. 2009) ..................................................................13

*Top Rank, Inc. v. Gutierrez*,
   236 F. Supp. 2d 637 (W.D. Tex. 2001) ...................................................................10

*Transnational Mgmt. Sys. II, LLC v. Carcione*,
   No. 14 cv 2151, 2016 WL 7077040 (S.D.N.Y. Dec. 5, 2016) ................................14

*Vicuña v. Alexia Foods, Inc.*,
   No. 11 cv 6119, 2012 WL 1497507 (N.D. Cal. 2012) ........................................5, 14

*Williams v. Gerber Prods., Co.*,
   552 F.3d 934 (9th Cir. 2008).................................................................................4, 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATUTES**

Cal. Com. Code § 2-314(f) .................................................................................12

Cal. Com. Code § 2-316 ....................................................................................12

Cal. Com. Code § 2-317 ....................................................................................11

N.Y. G.B.L. § 349 ........................................................................................8, 9, 10

N.Y. G.B.L. § 350 ........................................................................................8, 9, 10

N.Y. U.C.C. § 2-314(f) ......................................................................................12

N.Y. U.C.C. § 2-316 ..........................................................................................12

N.Y. U.C.C. § 2-317 ..........................................................................................11

**OTHER AUTHORITIES**

Fed R. Civ. P. 8 ................................................................................................14

https://support.apple.com/en-us/HT203375 ......................................................8

## I.       INTRODUCTION[1]

Contrary to the plaintiffs' suggestion, this is not a "straightforward case of false advertising."  To create the appearance of a deception, the plaintiffs must cherry-pick information from the television show menu they viewed using their Apple TV devices and apply their own assumptions, "ratios," and "arithmetic."  The plaintiffs allege that Apple deceived them because the plaintiffs recombined information from separate parts of the menu and assumed that the "## Episodes" at the bottom of the menu (which is coupled to an actual list of all the episodes the plaintiffs ignored) referred to the number of "standard, plot-based episodes" included with a "Season Pass" purchase option listed elsewhere on the menu.  The plaintiffs then performed "arithmetic" using "ratios" and an assumed episode pricing structure (ignoring the actual price on the menu for each episode) to calculate an unspecified discount (there was no promise of a discount on the menu).  The plaintiffs are forced to admit that this "ratio" did not lead to a specific discount because they did not know how many episodes the season would end with at the time they purchased their Season Pass.

Conversely, the plaintiffs also try to complicate the straightforward menu.  For example, they argue that they should not be required to "browse" through "Apple's on-line store," "multiple pages," or "peripheral menus" to "scour" or "root around for the truth."  Opp. at 1, 8, 9.[2]  In reality, the menu that Apple TV users view on a television screen is well-organized and designed for an interactive experience that allows users to make fully informed decisions about their purchases.  Upon identifying a television show of interest—as Zaragoza did with "Genius: Einstein" and Coyle did with "Killing Eve"—a user views an interactive digital menu that includes detailed information about the show, including (i) each episode's title, episode number,

---

[1] Capitalized terms not defined herein are defined in Apple's opening memorandum, ECF No. 23 (the "Motion" or "MTD").  The plaintiffs' Opposition, ECF No. 24, is cited as "Opp."

[2] The plaintiffs are attempting to take unfair advantage of the limits of paper and what can be submitted by brief.  To the extent the Court has any questions about how information is displayed to consumers on the interactive menu and through scrolling, Apple requests oral argument and the opportunity to make a live demonstration of the entire panorama of information available to users.

run time, and original air date; (ii) a brief synopsis of the show and of each episode; and (iii) the episode-specific viewing and purchase options (*e.g.*, whether an episode is available as a standalone or must be purchased as part of a season package). *See* Exs. 1–4 to Declaration of Anh Nguyen in Support of Motion and Request for Judicial Notice ("Nguyen Decl.").

The whole purpose of having an interactive menu for Apple TV users is to present relevant information that is easily available and at their fingertips and to encourage them to use it. In the Opposition, the plaintiffs try to distinguish Ninth Circuit and other precedent involving the most analogous platform (scrollable webpages) and redirect the Court's attention to a number of inapplicable lines of cases involving front-and-back labeling discrepancies (*e.g.*, the "all natural" cases), illusory "sales" offers (*e.g.*, the "compare to" cases), and quality claims (*e.g.*, the "handmade" cases). These inapposite cases deal with static media (*e.g.*, food products, print advertisements, and product packaging). Unlike the advertisements and packaging in the cases cited by the plaintiffs—such as those that proclaim one thing on the front but disclaim it on the back in fine print—the menu here contains no affirmative representation and, on its face, is designed to maximize the amount of information available to consumers.

Ultimately, the plaintiffs appear to realize that their claim is not straightforward and that context matters. They concede, as a legal matter, that a reasonable consumer must consider the "net impression" of the menu without isolating the alleged representation "from its immediate surroundings." Opp. at 6, 11. It turns out the plaintiffs do not need to look at a dictionary to see that the word "Episode," in context, appears on the screen as a header for a scrollable list of video thumbnails, and that "Episode" clearly refers to that list (both plot-based content and bonus features). Nowhere on the menu does it state or imply that "Episode" refers only to "standard, plot-based episodes" or that the number of "Episodes" represents the number of plot-based episodes in a Season Pass. There is no nexus between the currently available "## Episodes" and the "Season Pass," which provides access not just to currently available episodes but future ones

///

///

///

as well, all for a single, fixed price regardless of the ultimate number of episodes.[3]

In short, all of the plaintiffs' claims fail as a matter of law because they are premised on a deliberate misinterpretation of the menu. The CLRA and warranty claims fail for the additional reason that neither the CLRA nor the UCC applies to television content licensed through iTunes. In the Opposition, the plaintiffs abandon the Complaint's allegation that the Season Pass is a "service" and now refer to it as "computer software" in an attempt to bring it within the definition of a "good" under the CLRA. This is not pled in the Complaint and the Court should reject this belated pivot. The fraud and unjust enrichment claims fail for the reasons set forth in the Motion. And, all claims fail because the plaintiffs have not sustained any injury—they purchased a Season Pass that gave them access to all past and future episodes of a season at a fixed price and that is exactly what they received. Common sense and the law require dismissal of the plaintiffs' Complaint and all the claims therein with prejudice.

## II.   ARGUMENT

### A.   The CLRA, UCL, FAL, and Fraud Claims Fail as a Matter of Law.

#### 1.   The Menus Do Not Mislead or Deceive a Reasonable Consumer.

As set forth in the Motion, the plaintiffs cannot allege a mere possibility that the menu for their shows might conceivably be misunderstood if a user viewed the menu in an unreasonable manner, such as by focusing on the word "Episode" to the exclusion of everything else. MTD at 11–13. Yet in the Opposition, the plaintiffs double down on isolating the word "Episode" and calling it an "explicit and unambiguous" representation that everything was a "standard, plot-based episode" by resorting to the dictionary. *See* Opp. at 4. The plaintiffs' definition appears

---

[3] The only reasonable and plausible interpretation of the "## Episodes" in context is that it calls attention to the fact that users need to scroll to see the then-available season content and prices. The plaintiffs do not address the fact that the number of episodes listed changes as content is added, rendering implausible any allegation that Apple ***intended*** to "message" a discount by the "## Episodes." Under the plaintiffs' theory, Apple TV users who buy a Season Pass after the first episode could calculate no discount using the plaintiffs' "basic arithmetic" (whether it is right or wrong), while those who wait until late in the season to buy a Season Pass could reach a different result. Yet they all get the same thing at the same price: access to a season's worth of a chosen television show for a set price.

nowhere on the menu.  Moreover, the plaintiffs inadvertently admit they can determine that "Episodes" refers to both plot-based episodes and so-called promotional content even with respect to TV shows they never purchased.  Compl. ¶¶ 24–30.

The plaintiffs cannot rely on a dictionary to the exclusion of the context of the menu and the information that was visibly and conceptually paired with the word "Episode."  *See generally* MTD at 11–15.  "The question is not what meaning a neutral third-party might give to the word . . . standing on its own.  The question is how a reasonable consumer would interpret the phrase . . . *in the context of the specific commercial interaction* that Plaintiff has challenged." *Delman v. J. Crew Grp., Inc.*, No. 16 cv 9219, 2017 WL 3048657, at *7 (C.D. Cal. May 15, 2017) (emphasis added).  The plaintiffs prefer to ignore their specific commercial interaction of buying a Season Pass because it would force them to acknowledge the substantial information that was provided to them during that transaction.  The plaintiffs' reliance on *Williams* is misplaced for this reason as well.  More recently, the Ninth Circuit explained that "*Williams* stands for the proposition that, *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (affirming dismissal where common experiences and information readily visible to the plaintiff rendered the allegations of deception implausible).  Here, like in *Ebner* and unlike in *Williams*, there is no deceptive act to be dispelled.

The plaintiffs fall back from their alleged express representation arguments and concede that context matters, as they must, both as a matter of law and because the alleged deception they plead requires a convoluted and intricate misuse of selective parts of the menu surrounding the alleged "## Episodes" representation.  *See, e.g.,* Opp. at 3, 6 (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).  The plaintiffs cannot assert, on the one hand, claims that purportedly rely on some portions of the menus and then, on the other hand, argue that Apple's reliance on the total mix of information available on the menus is inappropriate.  In *Fink*, the Second Circuit affirmed dismissal of the plaintiffs' claims under the California and New York consumer protection statutes, emphasizing that "in determining whether a reasonable consumer would have been misled by a particular advertisement, *context is crucial*."  714 F.3d at 742

(emphasis added) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995)).  The same is true here.

The "crucial" context here—which the plaintiffs miscast as the "context of a television show," Opp. at 6—is the placement of the word "Episode" in the same shaded area as the list of episodes, which is separate from the pricing for the Season Pass.  *See, e.g.,* Exs. 1–4 to Nguyen Decl.  Although this positioning is plain from even a cursory review of the menus, the plaintiffs draw flawed analogies to inapposite analytical frameworks, where the truth either has been concealed or would be difficult to discover.  These cases fit into five inapposite fact patterns:

- Manufacturers that boast their products are "healthful" or "natural" in big lettering while hiding harmful or unnatural ingredients in small lettering on the other side of the package (if disclosed at all).[4]

- Retailers that advertise a "sale" price based on an artificial "original" price.[5]

- Product manufacturers that misrepresent their manufacturing processes.[6]

- Product manufacturers implying the benefits of using their products compared to competitors' products.[7]

---

[4] *See Williams v. Gerber Prods., Co.*, 552 F.3d 934 (9th Cir. 2008) ("fruit" snack did not contain the depicted fruits); *Gregorio v. Clorox Co.*, No. 17 cv 3824, 2018 WL 732673 (N.D. Cal. Feb. 6, 2018) ("natural" cleaning product contained synthetic chemicals); *Vicuña v. Alexia Foods, Inc.*, No. 11 cv 6119, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ("natural" potatoes had chemical preservative); *Brenner v. Procter & Gamble Co.*, No. 16 cv 1093, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016) ("natural" product contained harmful chemical); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330 (E.D.N.Y. 2018) (applying FDA rule regarding naming conventions for juice products and holding that an ingredient list did not correct the violation); *Atik v. Welch Foods, Inc.*, No. 15 cv 5405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) ("fruit" snack mostly sugar).

[5] *See Delman*, 2017 WL 3048657 (clothing sale price compared to higher "valued at" price that was never used, basis for "valued at" price not disclosed); *Chester v. TJX Cos., Inc.*, No. 15 cv 1437, 2016 WL 4414768 (C.D. Cal. Aug. 18, 2016) (same, but basis for comparison price disclosed only in hard-to-find webpage and limited in-store signage); *Sperling v. Stein Mart, Inc.*, No. 15 cv 1411, 2016 WL 11265686 (C.D. Cal. Mar. 15, 2016) (same).

[6] *See Singleton v. Fifth Generation, Inc.*, No. 15 cv 474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ("handmade" vodka made using automated process; process not disclosed).

[7] *See In re NJOY, Inc. Consumer Class Action Litig.*, No. 14 cv 428, 2015 WL 12732461 (C.D. Cal. May 27, 2015) (implied health benefits of e-cigarettes compared to traditional cigarettes).

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

1       ▪      A "slack-fill" case from the United States District Court for the Southern District of

2              New York that, since it was decided, has drawn criticism.[8]

3    None of these cases deal with the situation here, where complete, accurate information is directly

4    adjacent to and "in the same bordered area" as the allegedly misleading statement.  *See* MTD at

5    13–14.   Moreover, representations about the ingredients, the manufacturing process, health

6    benefits of a product, or a perceived value are driving factors in inducing a customer to purchase a

7    product.  By contrast, the word "Episodes" used here does not imply anything about the content,

8    length, pricing, or quality of any episode that may be included with a Season Pass.

9            The cases cited by Apple from the Ninth Circuit and district courts therein concerning

10   interactive messaging content (such as webpages) are far closer to the mark and cannot simply be

11   brushed aside by the plaintiffs.  *See* MTD at 13–14 (citing *Davis v. HSBC Bank Nevada, N.A.*, 691

12   F.3d 1152 (9th Cir. 2012) (disclosure in scrollable text box defeated claims), *Castagnola v.*

13   *Hewlett-Packard Co.*, No. 11 cv 5772, 2012 WL 2159385 (N.D. Cal. June 13, 2012) (disclosure

14   on webpage defeated claims), and *Baxter v. Intelius, Inc.*, No. 09 cv 1031, 2010 WL 3791487

15   (C.D. Cal. Sept. 16, 2010) (same)).  The plaintiffs attempt to limit *Davis* to omission claims and

16   erroneously distinguish *Castagnola* as involving disclosures "on the *same page*."  Opp. at 10–11

17   (emphasis in original).  But those cases (and *Baxter*) are highly relevant.  The plaintiffs cannot

18   escape the fact that they assumed something about the Season Pass (*i.e.*, that it contained only

19   "standard, plot-based episodes" and provided a "significant discount") that, beyond being

20   completely absent from the menu, was wholly inconsistent with all of the information provided to

21   the plaintiffs in a scrollable list that appeared *right beneath* the word "Episodes."  The plaintiffs

22   cannot survive dismissal by "omit[ting] essential detail from their description of the" menu,

23   especially where they declined to view information "in close proximity" to the allegedly

24   misleading representation.  *See Baxter*, 2010 WL 3791487, at *4.

25   _____

26   [8] *Izquierdo v. Mondelez Int'l, Inc.*, No. 116 cv 4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016);
     *compare with Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 192 (E.D.N.Y. 2018)
27   (disagreeing with *Izquierdo*).

28

There remains the issue of the "significant discount" that the plaintiffs claim was "messaged" by Apple.  Opp. at 7.  This claim is even more tenuous.  Indeed, as the plaintiffs now openly admit, the supposed "significant discount" representation is derived from the plaintiffs' own speculation and "arithmetic skills," not something that Apple stated in the menu.  *Id.* Although there are no facts to show that Apple intended for them to do so, the plaintiffs subjectively applied these arithmetic skills to determine the "ratio of the Season Features' price to the number of episodes."  *Id.*  The plaintiffs then concluded that if "Apple provides fewer episodes," the "discount will be smaller."  *Id.*  The plaintiffs' admission that they did not have an actual discount in mind when they purchased their shows demonstrates that the plaintiffs are relying on "subjective expectations [that] warrant dismissal."  *Cruz v. Anheuser-Busch, LLC*, No. 14 cv 09670, 2015 WL 3561536, at *8 (C.D. Cal. June 3, 2015) (dismissing the plaintiffs' UCL, FAL, and CLRA claims, in part because they failed to show a reasonable consumer would be misled that a beverage was "low-calorie" because it was called the "Bud Light Lime-a-Rita"); *see also Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 871 (E.D.N.Y. 2018) ("Under the CLRA, UCL, FAL, and MMPA, it is not enough for a plaintiff to assert, based on his or her own subjective belief that a statement on the defendant's label conveyed the alleged implied message.").

The plaintiffs cannot plausibly plead that the menu made any promises that were deceptive and misleading to a reasonable consumer viewing the menu in context.  For this reason, each of the California consumer protection claims and the fraud claim—and indeed all of the claims in the Complaint—should be dismissed with prejudice.

### 2.    The CLRA Does Not Apply to the Plaintiffs' Transactions.

In the Complaint, the plaintiffs allege that a Season Pass is a "service."  Compl. ¶ 61.  As Apple showed in its Motion, a Season Pass is not a service because it is a license for television content.  MTD at 15–16.  Now, the plaintiffs assert that the Season Pass, rather than a service, is "computer software" on the "Apple TV's physical hard drives" and therefore constitutes "tangible chattels" (*i.e.*, a "good").  Opp. at 12–13.  This is a wholesale change in the plaintiffs' theory, and there are no allegations in the Complaint that a Season Pass is "computer software."  Nor could the plaintiffs make such an allegation—they know full well that an Apple TV does not play

1   content unless it is streamed from the internet.  The content does not reside on Apple TV like

2   software on a computer.  *See* https://support.apple.com/en-us/HT203375.  The plaintiffs cannot

3   avoid dismissal of their CLRA claim by raising a new theory that requires new factual allegations

4   for the first time in response to a motion to dismiss.  *Schneider v. Cal. Dep't of Corrections*, 151

5   F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[A] court *may not* look beyond the complaint to a plaintiff's

6   moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

7       The plaintiffs also wrongly suggest that calling the Season Pass a "license" is a game of

8   semantics to "escape liability."  Opp. at 13.  The Agreement plainly states that television content

9   purchased through the iTunes Store is by a license.  Ex. 5 to Nguyen Decl. at 1.  Moreover, unlike

10  the cases to which the plaintiffs draw a misguided analogy,[9] the plaintiffs have not alleged (and

11  cannot allege) that Apple produces or owns the television content or sells CDs or DVDs

12  containing television content.  For this reason, the plaintiffs' footnote treatment of *Lazebnik v.*

13  *Apple Inc.*, No. 13 cv 4145, 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014), is not compelling.  In

14  *Lazebnik,* a sister court ruled that Apple's Season Pass is not a "good" under the CLRA.  The

15  Court should follow suit here and dismiss the CLRA claim, with prejudice.  *See also Rojas-*

16  *Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1117 (N.D. Cal. 2016) ("software utilized entirely

17  online" not a good or service under the CLRA).

18      **B.    The N.Y. G.B.L. §§ 349 and 350 Claims Fail as a Matter of Law.**

19      Plaintiff Coyle does not separately respond to Apple's arguments concerning the two New

20  York statutes under which he makes his claims, and concedes the vast majority of the precedent

21  applying New York law as cited in the Motion, *see* MTD at 16–18.  Instead, Coyle vaguely

22  suggests that stating a claim under the UCL, FAL, and CLRA is sufficient to state a claim under

23  N.Y. G.B.L. §§ 349 and 350.  *See* Opp. at 11.  This is not enough.  The Court should apply the

24  unrefuted law as stated in Apple's Motion and dismiss the N.Y. G.B.L. §§ 349 and 350 claims.

25      The plaintiffs' Opposition also contains a new admission that is fatal to Coyle's claims in

26

27  [9] *See Haskins v. Symantec Corp.*, No. 13 cv 1834, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) and
    *Perrine v. Sega of America, Inc.*, 13 cv 1962, 2013 WL 6328489 (N.D. Cal. Oct. 3, 2013).

28

their entirety.  The plaintiffs admit that "a home page" (*e.g.*, the screenshot that the plaintiffs included within the Complaint for "Genius: Einstein") may "note that the season bundle includes promotional content."  Opp. at 10.  This belated admission follows Apple's submission of a screenshot for the show purchased by Coyle, "Killing Eve," a copy of which Coyle did not attach to the Complaint.  As reflected in the screenshots attached to the RJN, *see* Ex. 2 to Nguyen Decl., Episodes 2 and 4 of "Killing Eve" are visible on the so-called "home page," are styled as "Closer Look" episodes, and, in lieu of a price, state that they were available with the "Season Only." MTD at 5.  To be clear, "Closer Look" episodes are what the plaintiffs have termed non-plot-based "promotional content."  Thus, any attempt to interpret "Episode" on the "Killing Eve" menu as limited only to "standard, plot-based episodes" is patently unreasonable.

This goes to a further point.  Under the plaintiffs' interpretation, "Episode" means something different for Zaragoza on the "Genius: Einstein" "home page" than it does for Coyle on the "Killing Eve" "home page."  The concession of a changeable meaning of "Episode" undoes the plaintiffs' central premise that Apple has engaged in a scheme to cause Apple TV users to rely on a one-size-fits-all, misleading definition of "Episode."  When the proper context is considered, the term "Episode" is not some universal representation that every episode is a "standard, plot-based episode," nor does it "message" a particular discount.

Coyle's claims under N.Y. G.B.L. §§ 349 and 350 should be dismissed.

**C.    The Plaintiffs' Warranty Claims Fail as a Matter of Law.**

**1.    The UCC Is Inapplicable Because the Plaintiffs Did Not Buy "Goods."**

The Complaint asserts that a Season Pass is a "service," Compl. ¶ 61, in apparent recognition that a license of television content is not a "sale of goods."  This is fatal to the express and implied warranty claims.  MTD at 18–19.  In the Opposition, the plaintiffs argue that a reference to the Season Pass as a "good" in paragraph 94 to the Complaint saves the claim.  Opp. at 14.  The plaintiffs' passing reference to a "good" in paragraph 94 is a "formulaic recitation of the elements," which "will not do."  *Morrison v. Ross Stores, Inc.*, No. 18 cv 2671, 2018 WL 5982006, at *2 (N.D. Cal. Nov. 14, 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Moreover, as with the CLRA claim, the plaintiffs cannot amend their claim in response

1   to a motion to dismiss.  *Schneider*, 151 F.3d at 1197.

2       Additionally, as set forth above, the licensing of television content is not a purchase of

3   "computer software."  Opp. at 14.  The plaintiffs have not presented any case drawing this analogy

4   between television content and software.  By contrast, there are numerous cases finding that

5   television shows are ***not*** goods covered by the UCC.  *See In re Pilgrim's Pride Corp.*, 421 B.R.

6   231, 239 (Bankr. N.D. Tex. 2009) ("[A] television show . . . consumed through viewing obviously

7   does not fall within the meaning of 'goods.'"); *see also Top Rank, Inc. v. Gutierrez*, 236 F. Supp.

8   2d 637, 664–65 (W.D. Tex. 2001) (transmitting specific television programs ordered by customers

9   not a transaction in goods); *Mattingly v. Hughes Elecs. Corp.*, 107 F. Supp. 2d 694, 696 n.1 (D.

10  Md. 2000) (television programming "is not a 'transaction in goods'") (*dictum*).

11      There is no transaction for the sale of goods to support any claim by either plaintiff under

12  the UCC.  Accordingly, the plaintiffs' warranty claims should be dismissed with prejudice.

13      **2.     The Plaintiffs Cannot Allege an Express or Implied Warranty.**

14          **a.     The Term "Episode" Is Not an Affirmation of Fact.**

15      Although the Complaint alleges both express and implied warranty claims, the plaintiffs

16  agree that these claims rise, or, in this case, fall together because they are based on the same

17  alleged affirmation of fact—*i.e.*, that "Episode" means "standard, plot-based episode."  Opp. at 10.

18  As Apple repeatedly has demonstrated, however, the use of the word "Episode" in the context of

19  the entire menu was not an unequivocal affirmation of fact regarding content or a discount.  MTD

20  at 19–20.  The plaintiffs, again relying on a series of cases from the "healthful"/"natural" context,

21  wrongly assert that the Court cannot decide this issue on a motion to dismiss.  Opp. at 15–16

22  (citing, *e.g.*, *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017); *Parker v.

23  J.M. Smucker Co.*, No. 13 cv 690, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013); *Buonasera v.

24  Honest Co., Inc.*, 208 F. Supp. 3d 555 (S.D.N.Y. 2016)).  As with the failed claims under the

25  UCL, FAL, CLRA, and N.Y. G.B.L. §§ 349 and 350, these food packaging cases do not save the

26  plaintiffs' claims.  Their warranty claims are based on assumptions and arithmetic leaps of logic

27  that contradict the context of "Episode" on the menu.  As a matter of law, the plaintiffs'

28  interpretation is not plausible and the claims should be dismissed.  *See, e.g., Dickey v. Advanced*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

*Micro Devices, Inc.*, No. 15 cv 4922, 2016 WL 6427852 (N.D. Cal. Oct. 31, 2016) (dismissing warranty claim where the alleged statements did not support the plaintiff's attempt to imbue the term processing "core" with a particularized meaning).

Regardless, the claims still fail because the "general language" of "Episode" necessarily gives way to more "exact" information about each episode as a matter of warranty law. *See* Cal. Com. Code § 2-317; N.Y. U.C.C. § 2-317. The plaintiffs' contention that section 2-317 applies only where there are "conflicting warranties," and "there are no conflicting warranties" here is self-defeating. Opp. at 16. If "Episodes" constitutes a warranty about the general nature of episodes, "Episode 101" (with respect to "Genius: Einstein") would be a more exact statement about that particular episode—*i.e.*, that it is the "Genius Extended Trailer." *See* MTD at 8.[10] For this additional reason, the warranty claims fail and should be dismissed.

### b. The Agreement Disclaimed Any and All Alleged Warranties.

The plaintiffs' warranty claims also fail because of the conspicuous "DISCLAIMER OF WARRANTIES" in the Agreement attached as Exhibit 5 to the Nguyen Declaration. *Id.* at 21. The fact that the plaintiffs artfully omitted any reference to the Agreement in pleading these claims is not a basis for this Court to disregard the Agreement. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *see also* Apple's Reply ISO RJN, filed concurrently herewith. In the Opposition, the plaintiffs advance three reasons that the disclaimer purportedly does not bar their claims: (1) the disclaimer was not conspicuous; (2) even if it were conspicuous, the Agreement cannot disclaim an implied warranty of merchantability claim that overlaps with an express warranty; and (3) the disclaimer is not effective against any express warranties. Opp. at 18–20. The plaintiffs are wrong as to all three reasons.

---

[10] Although the plaintiffs cite the analysis in *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018), that case dealt with a vitamin bottle label which, as interpreted by the court, "impliedly warranted" something on the front that the defendant attempted to "negate[] by a disclaimer on the back." *Id.* at 1178. Apple's argument (and the menu) here does not involve a disclaimer. It involves the *same word*, but with more exact information in close proximity thereto. The fact that this displaces a more general warranty does not make it a "disclaimer," or else UCC section 2-317 would be dead letter.

*First*, as Apple noted in the Motion, courts routinely find that Apple's warranty disclaimers, like the one here, MTD at 9, are conspicuous because they appear in all-capital lettering that distinguishes the disclaimer from the surrounding text. *See, e.g., Minkler v. Apple Inc.*, 65 F. Supp. 3d 810 (N.D. Cal. 2014) (cited at MTD 21).  The plaintiffs argue that the disclaimer here does not pass muster because it is in a multi-page document that was provided to allegedly unsophisticated consumers and had more than one section in all-capital lettering.  The plaintiffs' observations, however, do not distinguish the warranty here from the warranty that was enforced in *Minkler*.  The disclaimer in the Agreement is conspicuous because it is clearly labeled and stands out visually from the rest of the text.  *See In re Google Phone Litig.*, No. 10 cv 1177, 2012 WL 3155571, at *8 (N.D. Cal. Aug. 2, 2015) (holding that disclaimer near the end of multi-page agreement was conspicuous where it was one of three sections in all-capital lettering).

*Second*, the plaintiffs do not cite any authority for the proposition that an implied warranty of merchantability cannot be disclaimed if it overlaps with an express warranty "on the container or label if any," Cal. Com. Code § 2-314(f); N.Y. U.C.C. § 2-314(f).  To the contrary, the plain text of the UCC allows the seller to disclaim the implied warranty of merchantability without any carve-out for subsection (f).  *See* Cal. Com. Code § 2-316; N.Y. U.C.C. § 2-316.  Although the plaintiffs purport to derive this argument from the *Hadley* decision, that case did not involve a disclaimer.

*Third*, the plaintiffs' argument that the disclaimer in the Agreement "gives way" to the alleged express "Episode" warranty misses the point.  The menu does not contain any express warranty about "standard, plot-based episodes" or "significant discounts."  The Agreement reinforces the absence of such warranties by stating that the content is delivered "WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED."  Ex. 5 to Nguyen Decl. at 10.  This is, therefore, a far different situation than the cases cited in the Opposition, where it was held that specific warranting language could not be disclaimed.  *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 941 (N.D. Cal. 2018) ("up to seven hours" of battery life); *Gross v. Symantec Corp.*, No. 12 cv 154, 2012 WL 3116158, at *10–11 (N.D. Cal. July 31, 2012) (software would "perform specific functions").

### D.      The Plaintiffs' Common Law Fraud Claims Fail as a Matter of Law.

In the Motion, Apple showed that the common law fraud claim fails because the plaintiffs have not alleged the requisite facts to establish a misrepresentation, Apple's *scienter*, and the plaintiffs' justifiable reliance.  MTD at 22–23.  In response, the plaintiffs again argue that "Apple undoubtedly was aware" that consumers would subjectively interpret "Episode" to mean "plot-based episode" and bundled "plot-based episodes" with "promotional content" to make it seem as though there was a "steeper" "discount" for those who bought the Season Pass.  Opp. at 21.  They also argue that justifiable reliance is a fact issue that cannot be raised on a motion to dismiss.  *Id.* at 22.   Dismissal is appropriate, however, where a person's reliance on a purported misrepresentation "in the light of his own intelligence and information was manifestly unreasonable."  *Davis*, 691 F.3d at 1163 (quotation omitted).

As explained above, the plaintiffs' assertion that there was a representation leading consumers to believe they would receive a "steeper" discount is facially implausible.  For example, if the plaintiffs' "arithmetic" is used in the early stages of a show's season, buying a Season Pass will appear more expensive than buying each episode individually.  Beyond that, some shows (like "Killing Eve") put the so-called "promotional content" directly under the word "Episodes" on the menu, while for other shows, the information comes from scrolling through the episode list.  In short, each menu varied depending on what show was accessed and when, which belies any conclusion that Apple made misrepresentations with the intent to induce the plaintiffs' reliance in purchasing a Season Pass for a particular or significant discount.  All of the cases cited by the plaintiffs involved definite, invariable representations from which a conclusion of the defendants' knowledge could be established.  *See Arroyo v. TP-Link USA Corp.*, No. 14 cv 4999, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) (home router performed "up to 500 Mbps"); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10 cv 4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011) (ice cream was "natural"); *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060 (N.D. Cal. 2009) (company director stated that a certain action was "in the best interest" of a company); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14 cv 2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) (skincare product's performance was enhanced by "DNA advantage").

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

With respect to the justifiable reliance element of a common law fraud claim, the plaintiffs do not dispute that only "when matters are held to be peculiarly within defendant's knowledge is it said that plaintiff may rely without prosecuting an investigation . . . ." *Transnational Mgmt. Sys. II, LLC v. Carcione*, No. 14 cv 2151, 2016 WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016) (citation omitted) (cited at MTD at 23); *cf. Davis*, 691 F.3d at 1163.  Although the plaintiffs dispute the convenience of certain information, they do not dispute that the whole list of episodes was available to users, and that information included both plot-based content and bonus features, as well as the price per episode.  As a result, the plaintiffs cannot dispute that even the most cursory investigation revealed the full set of information.  In fact, the plaintiffs were able to find that information for other television shows they did not purchase by viewing the menus.  *See* Compl. ¶¶ 24–29.  For all these reasons, their fraud claim should be dismissed.

### E.       The Plaintiffs Cannot Assert a Quasi-Contract Claim for Restitution.

Both the Ninth Circuit and the Second Circuit, applying California and New York law, hold that the existence of a binding contract—like the Agreement here—displaces any claim for quasi-contract.  MTD at 23.  The plaintiffs argue that Rule 8 allows pleading in the alternative. Opp. at 23 (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), *Vicuña*, 2012 WL 1497507, and *Astiana*, 2011 WL 2111796).  None of the plaintiffs' cases, however, involve an express contract like the one here.

Moreover, as Apple established in its Motion, there is no basis for restitution.  The plaintiffs received the full Season Passes they purchased at the announced prices and did not seek to return them for a refund.  MTD at 24.  The plaintiffs' circular response is that they did not receive "the full value of the benefit conferred on Apple."  Opp. at 23.  They do not plausibly explain why the money they paid Apple exceeded the value of the Season Pass they received. Thus the unjust enrichment claim should be dismissed for this additional reason.

### F.       The Plaintiffs Have Not Suffered Any Actionable Injury.

Although the plaintiffs now seemingly admit that they were never promised a specific discount, they still suggest that there is some sliding scale of harm based on an expected "steeper" discount and supposed "ratio of the Season Features' price to the number of episodes."  *Id.* at 7 &

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 4:18-CV-06139-PJH

n.5, 24.  By purchasing a Season Pass, the plaintiffs received both a discount and a full season of their television shows at the announced price.  Accordingly, the plaintiffs have not been harmed and lack both statutory and Article III standing to pursue the claims.  All of their claims must therefore be dismissed for this additional reason.  MTD at 24–25.

## III.      CONCLUSION

For the foregoing reasons and those set forth in its Motion and RJN, Apple respectfully requests that the Court enter an order granting this Motion and dismissing the plaintiffs' Complaint and each of the claims therein, with prejudice.


Dated:  January 31, 2019

DLA PIPER LLP (US)

By:  /s/ *Isabelle L. Ord*
　　　ISABELLE ORD
　　　RAJ N. SHAH
　　　ERIC M. ROBERTS
　　　CHELSEA N. MUTUAL

　　　Attorneys for Defendant
　　　APPLE INC.