UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELA ZARAGOZA, et al.,<br>　　Plaintiffs,<br>　　v.<br>APPLE INC.,<br>　　Defendant. | Case No. 18-cv-06139-PJH<br><br>**ORDER DENYING MOTION TO DISMISS**<br>Re: Dkt. No. 23 |

Defendant Apple Inc.'s ("Apple") motion to dismiss came on for hearing before this court on February 27, 2019. Plaintiffs appeared through their counsel, Ben Heikali. Defendant appeared through its counsel, Isabelle Ord and Eric Roberts. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion, for the following reasons.

**BACKGROUND**

Plaintiffs Gabriela Zaragoza and Joseph Coyle bring this putative class action against Apple. They allege nine causes of action: (1) Violation of California Civil Code §1750, et seq. ("CLRA"); (2) Violation of California Business and Professions Code § 17200, et seq. ("UCL"); (3) Violation of California Business and Professions Code § 17500, et seq. ("FAL"); (4) Breach of Express Warranty; (5) Breach of Implied Warranty; (6) Common Law Fraud; (7) Quasi-Contract/Restitution; (8) Violation of New York General Business Law ("N.Y. G.B.L.") § 349; and (9) Violation of New York General Business Law § 350. Compl., Dkt. 1.

Plaintiffs base each cause of action on the same underlying factual allegations. They allege that Apple markets and sells television shows and seasons of television shows through its iTunes store on two versions of the Apple TV, Apple TV 4 and 4k ("Apple TV"). Id. ¶ 1 & n.1. The iTunes store on Apple TV displays a home page for each season of a television show, which provides general information about the season and three purchasing options. Id. ¶¶ 2–3. Customers can purchase individual episodes, an entire season where all episodes are already available (the "Buy Season" option), and an option to buy all current and future episodes of a season where some episodes have not yet aired so are not yet available (the "Season Pass" option). Id. ¶ 3.

On each season's home page, Apple represents the number of "Episodes" available in that season. Id. ¶ 4. Individual video clips are displayed in a horizontal-scrolling list along the bottom of the screen immediately under the word "Episodes." Cost information is overlain on the thumbnail image representing each video, and some text is displayed underneath each image, as shown below. Id. ¶ 20.



Plaintiffs allege that when purchasing the "Buy Season" or "Season Pass" options, Apple delivers fewer than the advertised number of episodes. Id. ¶¶ 4–5. That is

2

because Apple counts both promotional videos and what consumers allegedly understand the word "episode" to mean—plot-based episodes of a television show—in its advertised number of episodes. Id. As a result, plaintiffs received fewer episodes than they believed they were purchasing, and they received a smaller discount by buying the entire season than they believed they were getting compared to buying individual episodes. Id. ¶¶ 4–5. Plaintiffs allege that they would have paid less or not purchased the seasons if they knew the truth. Id. ¶ 6.

Named plaintiffs plead their particular examples of the dynamic described above with respect to the TV shows "Genius: Edison" and "Killing Eve." Id. ¶¶ 12–13. At the time of their purchases, the seasons had commenced but were not yet complete. Plaintiffs allege they reviewed the information in the season's home pages and decided to purchase the "Season Pass" feature (id. ¶¶ 12–13), which granted them access to "all current and future episodes for the season" (id. ¶¶ 3, 18).

On May 31, 2017, Zaragoza purchased a season of "Genius: Edison" that advertised "13 Episodes" at the time of purchase. Six of those 13 were plot-based episodes, and seven were promotional videos. Id. ¶ 12. By season's end, Zaragoza had received the six plot-based episodes that had aired before her purchase, plus four plot-based episodes that aired later. See id. ¶¶ 12, 23. At season's end, iTunes advertised "22 Episodes" for "Genius: Einstein," which included ten plot-based episodes and 12 promotional videos. Id. ¶¶ 22–23.

On May 20, 2018, Coyle purchased a season of "Killing Eve" that advertised "11 Episodes" at the time of purchase. Five of those were plot-based episodes, and six were promotional videos. Id. ¶ 13. By season's end, Coyle had received the five plot-based episodes that had aired before his purchase, plus what appear to be three plot-based episodes that aired later. See id. ¶ 13; Dkt. 23-1 ("RJN"), Ex. 2.[1] At season's

---

[1] Plaintiffs do not object to defendant's request that the court take judicial notice of Exhibits 1 through 4 to defendant's request for judicial notice, Dkt. 23-1. The court therefore GRANTS defendant's request with respect to those exhibits.

3

end, iTunes advertised "17 Episodes" for the relevant season of "Killing Eve." RJN, Ex. 2. It appears that approximately eight of those videos were episodes, as plaintiffs allegedly understood the term. Id.

The unopposed exhibits to Apple's request for judicial notice also show that each episode can be selected, which then presents more detail about it. See RJN, Exs. 1–4.[2] For example, the Apple TV displays a title for the video file, the "episode number," the length of the video clip, its individual price, and a written description. Id.

On December 13, 2018, Apple moved to dismiss all claims and for judicial notice of certain materials.

## DISCUSSION

**A.  Legal Standard**

**1.  Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[2] The parties also each demonstrated how the Apple TV functions at the February 27, 2019 hearing.

4

alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)); see also Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document"). The court may also consider matters that are properly the subject of judicial notice (Lee v. City of L.A., 250 F.3d 668, 688–89 (9th Cir. 2001)), exhibits attached to the complaint (Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims (No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003)).

For plaintiffs' claims that sound in fraud, the complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. "To satisfy Rule 9(b)'s particularity requirement, the complaint must include an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Depot, Inc. v. Caring for Montanans, Inc., 915 F.3d 643, 668 (9th Cir. 2019) (internal quotation marks omitted).

**2. Rule 12(b)(1)**

Federal courts may adjudicate only actual cases or controversies, see U.S. Const. Art. III, § 2, and may not render advisory opinions as to what the law ought to be or affecting a dispute that has not yet arisen. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937). Because Article III's "standing" requirements limit subject matter jurisdiction, they are properly challenged under a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss. Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010); see also Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). The burden of establishing standing rests on the party asserting the claim. Renne v. Geary, 501 U.S. 312, 316 (1991). The "irreducible constitutional minimum" of standing consists of three elements. Spokeo Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id.

**B. Analysis**

**1. Claims 1–3 & 8–9: CLRA, UCL, FAL, & N.Y. G.B.L. §§ 349–50**

Defendant argues its alleged conduct is not misleading and that the CLRA does not apply to the alleged transactions because the sales were not for goods or services.

### a. Whether the Alleged Conduct Would Deceive a Reasonable Consumer

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The false advertising law prohibits any 'unfair, deceptive, untrue, or misleading advertising.'" Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) (quoting Cal. Bus. & Prof. Code § 17500). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). The Ninth Circuit has explained that "these California statutes are governed by the 'reasonable consumer' test." Williams, 552 F.3d at 938. "Under the reasonable

consumer standard, [plaintiff] must show that members of the public are likely to be deceived." Id. (internal quotation marks omitted). "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Id. (internal quotation marks omitted). A "reasonable consumer" test also applies to the N.Y. G.B.L. claims. Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 673 (E.D. N.Y. 2017).

"Whether a reasonable consumer would be deceived . . . is generally a question of fact not amenable to determination on a motion to dismiss." Ham v. Hain Celestial Grp., Inc., 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); accord Williams, 552 F.3d at 938–39; Nguyen v. Barnes & Noble, Inc., Case No. SACV12812JLSRNBX, 2015 WL 12766130, at *7 (C.D. Cal. June 16, 2015) (deception under N.Y. G.B.L. "is typically a question of fact"). "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." Ham, 70 F. Supp. 3d at 1193.

Defendant argues that plaintiffs' interpretation of the word "episode" is an implausible misunderstanding. First, it argues that a reasonable consumer could not understand the word "Episode" in the context of purchasing a season of a television show to mean a plot-based episode of that season. Rather, Apple argues that a reasonable consumer must understand that "Episode" includes advertisements, trailers, promotional videos, and other videos that are not part of the show's narrative. Second, it argues that the scrollable list of videos appearing immediately below the word "Episode" provides context that necessarily dispels any belief that the word "Episode" refers only to plot-based episodes.

First, this is not the type of "rare situation" where plaintiffs' alleged understanding of the word "Episodes" is implausible as a matter of law. It is plausible that consumers understand the word "Episode"—particularly in the context of a description of a season of a television series—to mean an episode that is part of the television show's season, and

7

1  not a commercial for the show or another type of promotional or behind-the-scenes video.
2  Reviewing the word's definition in readily-available dictionaries confirms that plaintiffs'
3  alleged understanding could be found reasonable by a trier of fact. E.g., Dictionary.com,
4  https://www.dictionary.com/browse/episode (last visited March 6, 2019) ("an incident,
5  scene, etc., within a narrative, usually fully developed and either integrated within the
6  main story or digressing from it"); Mirriam-Webster, https://www.merriam-webster.com/
7  dictionary/episode (last visited March 6, 2019) ("a developed situation that is integral to
8  but separable from a continuous narrative"); English Oxford Living Dictionary,
9  https://en.oxforddictionaries.com/definition/episode (last visited March 6, 2019) ("Each of
10 the separate instalments into which a serialized story or radio or television programme is
11 divided. 'the final episode of the series'").

Second, defendant rightly points out that context does matter, and a single word cannot be read in isolation if reading surrounding information would make its meaning clear. See Freeman v. Time, Inc., 68 F.3d 285, 289–90 (9th Cir. 1995). Apple argues that the Apple TV displays some information about each video clip on its associated thumbnail image, and more detailed information if the user elects to select or highlight a video clip by scrolling to it. Apple argues that a reasonable consumer would be able to deduce from such information that some video clips are not plot-based episodes. Although Apple may be right as a matter of fact, its arguments do not render plaintiffs' alleged understanding of Apple's representation of the number of "Episodes" implausible as a matter of law. See, e.g., Williams, 552 F.3d at 939–40 ("reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging"); Gregorio v. Clorox Co., Case No. 17-cv-03824-PJH, 2018 WL 732673, at *5 (N.D. Cal. Feb. 6, 2018) (at motion to dismiss, reasonable consumer does not expect further investigation to contradict earlier representations).[3]

---

[3] Moreover, there are factual questions concerning how much a consumer would have to investigate into the Apple TV menu structures to be exposed to much of the allegedly-

Even if Apple were correct that, as a matter of law, a reasonable consumer must scroll through the list of videos in sufficient detail to view the curative information (and that the information would in fact cure any misrepresentation), Apple's argument would still fail. There is an unresolved question of fact with respect to what consumers of the Season Pass feature were able to view in the list of videos when making their purchases. It appears that some episodes purchased as part of the Season Pass feature (but which had not yet aired) may not have been shown in the horizontal-scrolling list of videos at the time of purchase. The Apple TV appears to make no representation about how many future episodes there will be, but rather reports only on the total number of video clips associated with a show's season at the time the consumer views that season's home page. As a result, the Apple TV might hypothetically represent there are "10 Episodes" in a season, and the list of videos would display five narrative episodes and five promotional videos that are already available. But at this motion to dismiss stage, a reasonable consumer might expect that the representation of "10 Episodes" reflects how many narrative episodes there will be by the end of the season—not the sum of how many narrative episodes and promotional videos are presently available—and expect five more narrative episodes. Apple's arguments about the information accessible when scrolling through the list of videos do not explain how a consumer of a Season Pass could cure her misunderstanding with any amount of investigation at the time of purchase.

### b. Whether the CLRA Applies

Plaintiffs allege that Apple has violated certain provisions of the CLRA that concern "goods or services." See Compl. ¶¶ 3, 61–69; see also, e.g., Cal. Civ. Code § 1770. If the transactions at issue were not for "goods" or "services," they are not subject to the CLRA. Apple argues that it did not sell plaintiffs any services or goods. Instead, Apple sold licenses to view certain content.

The CLRA defines the terms "good" and "services" as follows:

---

curative information Apple describes. The answer appears to depend on the particular TV show being viewed.

9

> (a) "Goods" means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property.
>
> (b) "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.

Cal. Civ. Code § 1761. The CLRA provides generally that it "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

Plaintiffs' complaint alleges that Apple sells a "Season Pass" service that offers "all current and future episodes for the season," which includes a promise to offer current and future episodes for viewing on an ongoing basis as the season progresses. Compl. ¶¶ 3, 18, 61–64. Plaintiffs also allege that users "purchase" episodes through the Apple TV in conjunction with buying the service. E.g., id. ¶¶ 3, 16, 18, 21, 29.

Defendant asks the court to take judicial notice of a document it argues reflects the terms of a contract plaintiffs entered into with defendant governing the purchases at issue here. See RJN & Ex. 5. Defendant argues that pursuant to that contract, plaintiffs purchased only licenses to view television content, not any goods or services. However, the alleged contract is not judicially noticeable, as explained below. Accordingly, Apple's arguments based on the legal effects of its terms are not persuasive.

The court declines to consider the entirely-digital purchases alleged here as "tangible chattels"—and therefore "goods"—under the CLRA. However, although it may be appropriate to revisit this question after some development of the factual record, plaintiffs' complaint sufficiently alleges a service to state a claim under the CLRA. Given plaintiffs' allegations that their purchases included an ongoing ability to access the videos, and defendant's characterization of the purchases as licenses to view and stream video content from Apple, this claim presents factual questions inappropriate to resolve at

10

1  this motion to dismiss stage about whether the alleged iTunes purchases on Apple TV
2  constitute a service under the CLRA.

For the foregoing reasons, Apple's motion to dismiss claims 1–3 & 8–9 is DENIED.

### 2. Claims 4–5: Warranty

Plaintiffs bring claims for breach of express and implied warranties pursuant to the California Commercial Code and the New York Uniform Commercial Code. Those statutes require that (a) plaintiffs purchased "goods" pursuant to a contract for sale; (b) the term "Episode" is an actionable warranty; and (c) the warranties were not effectively disclaimed.

#### a. Whether Plaintiffs Purchased "Goods" Under the U.C.C.

The California U.C.C. applies only to contracts for the sale of "goods." E.g., Cal. Com. Code §§ 2106, 2313, 2314. Unlike under the CLRA, goods are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale[.]" Cal. Com. Code §§ 2102, 2105. To determine whether the contract involved the sale of a "good," courts look to the "essence of the agreement." Filmservice Laboratories, Inc. v. Harvey Bernhard Enters., Inc., 208 Cal. App. 3d 1297, 1305 (1989) (internal quotation marks omitted); United States v. United Pac. Co., 976 F.2d 1274, 1277 (9th Cir. 1992). Software licensing agreements often include both sales of goods and contracts for services. "When a sale [of a good] predominates, incidental services provided do not alter the basic transaction. Because software packages vary depending on the needs of the individual consumer, we apply a case-by-case analysis." RRX Indus., Inc. v. Lab-Con, Inc., 772 F.2d 543, 546 (9th Cir. 1985) (citations omitted).

"Courts have generally found that 'mass-produced, standardized, or generally available software, even with modifications and ancillary services included in the agreement, is a good that is covered by the UCC.'" Kentwool Co. v. NetSuite Inc, Case No. 14-cv-05264-JST, 2015 WL 693552, at *4 (N.D. Cal. Feb. 18, 2015); (quoting Simulados Software, Ltd. v. Photon Infotech Private, Ltd., 40 F. Supp. 3d 1191, 1199–1200 (N.D. Cal. 2014) (collecting cases)); Gross v. Symantec Corp., Case No. 12-cv-

11

00154-CRB, 2012 WL 3116158, at *9 (N.D. Cal. July 31, 2012) ("Although Plaintiff purchased and downloaded Symantec's software from the internet, and did not install the software from a CD, the 'essence of the agreement' is the same."); Kulesa v. PC Cleaner, Inc., Case No. SACV12725JVSANX, 2012 WL 12886844, at *7 (C.D. Cal. Oct. 12, 2012) ("PC Cleaner Pro is a 'good' and the UCC applies").

Because the court may not take judicial notice of the contract Apple has submitted, Apple's argument that plaintiffs purchased only licenses to stream video content from Apple is not persuasive in the face of plaintiffs' complaint. Plaintiffs allege they purchased seasons of television shows outright.[4] E.g., Compl. ¶¶ 1, 3 & n.1, 16, 18, 21, 29.

At the motion to dismiss stage, the court considers plaintiffs' allegations that Apple provided a mix of goods and services in the form of outright sales of television shows and the promise to provide ongoing access to the videos from plaintiffs' Apple TVs. Plaintiffs adequately allege that the essence of the agreement concerned the sale of the episodes. Those allegations are enough to allege a purchase of a good within the meaning of the UCC.

### b. Whether the Term "Episode" Is a Warranty

> Under California law, any affirmation of fact or promise relating to the subject matter of a contract for the sale of goods, which is made part of the basis of the parties' bargain, creates an express warranty. Cal. Com. Code § 2313(1)(a). California courts use a three-step approach to express warranty issues. Keith v. Buchanan, 173 Cal. App. 3d 13, 220 Cal. Rptr. 392, 395 (1985). First, the court determines whether the seller's statement amounts to "an affirmation of fact or promise" relating to the goods sold. Id. Second, the court determines if the affirmation or promise was "part of the basis of the bargain." Id. Finally, if the seller made a promise relating to the goods and that promise was part of the basis of the bargain, the court must determine if the seller breached the warranty. Id.

---

[4] Additionally, there appears to be some factual dispute concerning how video purchases made on the Apple TV are delivered to the device. Compare Compl. ¶ 3 ("consumers may purchase episodes individually"), and Opp. at 12 ("once users download the Season Features, the television shows are stored on the Apple TVs' physical hard drives"), with Reply at 7–8 ("an Apple TV does not play content unless it is streamed from the internet. The content does not reside on Apple TV like software on a computer").

12

McDonnell Douglas Corp. v. Thiokol Corp., 124 F.3d 1173, 1176 (9th Cir. 1997); see also N.Y. U.C.C. § 2–313(1).

"[C]ourts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty." Hadley v. Kellogg Sales Co., 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017) (citing Tsan v. Seventh Generation, Inc., Case No. 15-cv-00205-JST, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (because plaintiffs satisfied the reasonable consumer standard with respect to their California consumer protection claims, the same "allegations [we]re sufficient to state a claim for breach of express warranty")); Garrison v. Whole Foods Mkt. Grp., Inc., Case No. 13-cv-05222-VC, 2014 WL 2451290, at *2 (N.D. Cal. June 2, 2014); Ham, 70 F. Supp. 3d at 1195 (denying motion to dismiss breach of express warranty claim "for the same reasons as the consumer protection and misrepresentation-based claims").

Plaintiffs allege that the same statements underlying their FAL, CLRA, and UCL causes of action are the bases for their warranty claims. As with the FAL, CLRA, and UCL claims, plaintiffs adequately allege that Apple's representations about the number of Episodes purchased with a season amount to an affirmation of fact or promise relating to the goods sold, and the descriptions associated with the individually-listed episodes are insufficient to defeat plaintiffs' claim on a motion to dismiss.

### c. Whether Apple Disclaimed Warranties

Defendant requests judicial notice of a contract allegedly entered into between the parties disclaiming all warranties. See RJN & Ex. 5. Because the court may not take judicial notice of that document, Apple's argument that it disclaimed all warranties fails.

For the foregoing reasons, Apple's motion to dismiss claims 4 & 5 is DENIED.

### 3. Claim 6: Fraud

Defendant argues that plaintiffs' fraud claim should be dismissed for three reasons. First, plaintiffs have not alleged any false statement. Second, plaintiffs fail to allege Apple's knowledge or intent under Federal Rule of Civil Procedure 9(b). Third,

13

plaintiffs do not allege justifiable reliance because they could have discovered the truth by scrolling through the episode list.

First, plaintiffs' allegations supporting their CLRA, UCL, FAL, and warranty claims adequately allege false statements.

Second, a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see also Luong v. Subaru of Am., Inc., Case No. 17-cv-03160-YGR, 2018 WL 2047646, at *5 (N.D. Cal. May 2, 2018) (knowledge of defect underlying fraud claim "need only be alleged generally").

Plaintiffs allege that because Apple marketed and designed the iTunes store, the product offerings at issue here, and the information regarding the episodes, Apple knew or should have known that the representations regarding the number of episodes in a season were false and misleading. Compl. ¶ 39. They also allege that Apple knew or should have known that consumers would rely on Apple's representation and believe that "Episodes" referred to plot-based episodes, not promotional videos. Id. ¶ 40.

Plaintiffs' allegations are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs explain a plausible theory that Apple made buying a season look more attractive by leading a consumer to believe it contained more narrative episodes than it in fact did.

For the foregoing reasons, Apple's motion to dismiss claim 6 is DENIED.

### 4. Claim 7: Quasi-Contract/Restitution

The elements of a claim of quasi-contract or unjust enrichment are (1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense. Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008). "The doctrine applies where plaintiffs, while having no enforceable contract, nonetheless have

1  conferred a benefit on defendant which defendant has knowingly accepted under
2  circumstances that make it inequitable for the defendant to retain the benefit without
3  paying for its value." Hernandez v. Lopez, 180 Cal. App. 4th 932, 938 (2009).

The parties do not dispute the first element. With respect to the second element, defendant argues that its retention of the benefit is not unjust or at the plaintiffs' expense because consumers got what they bargained for: an entire season of a television show, at a discount compared to buying each episode individually.

Plaintiffs allege that they bargained for a given number of television show episodes for a certain price, and they were delivered fewer than that number of episodes. That adequately alleges unjust retention of a benefit.

Defendant also argues that the claim must be dismissed because a contract claim exists and was pled with respect to the warranties, and a quasi-contract claim cannot lie where a contract claim lies. But at the pleading stage, a claim for relief under a "quasi-contract" theory based on false and misleading labeling "is sufficient to state a quasi-contract cause of action" that can be pled in the alternative, even if it is "duplicative of or superfluous" of "other claims." Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762–63 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.")).

For the foregoing reasons, Apple's motion to dismiss claim 6 is DENIED.

**5.  Standing**

Apple argues that plaintiffs do not have standing to assert their CLRA, UCL, FAL, N.Y. G.B.L., and fraud claims because they have not alleged injury-in-fact or damages, which are necessary elements of those claims and are required for "statutory standing." Apple also argues that the absence of an injury-in-fact is a basis under Fed. R. Civ. P. 12(b)(1) to dismiss all claims in the complaint for lack of Article III standing. Mot. at 24–25. Apple argues that plaintiffs' allegations that they paid more for the product due to the misrepresentation, or that they would have not bought the product absent it, are

implausible because the misrepresentation did not promise a discount and plaintiffs have not identified an alternative option that would have been cheaper.

"For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 329 (2011); Chavez v. Blue Sky Nat. Beverage Co., 340 F. App'x 359, 361 (9th Cir. 2009) (under the UCL, FAL, and CLRA injury pled when plaintiff alleged "he did not receive what he had paid for" and "he would not have paid had he known the truth"). "[T]he economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 965 (9th Cir. 2018); Ackerman v. Coca-Cola Co., Case No. CV-0395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations."); Maya v. Centex Corp., 658 F.3d 1060, 1069 (9th Cir. 2011) ("Allegedly, plaintiffs spent money that, absent defendants' actions, they would not have spent. This is a quintessential injury-in-fact.") (citation omitted).

Plaintiffs allege that they received fewer episodes than Apple promised, and that they suffered injury by paying for but not receiving certain episodes. E.g., Compl. ¶¶ 5–6, 12–13. That is enough to allege an injury.

For the foregoing reasons, Apple's motion to dismiss for lack of standing is DENIED.

**6. Request for Judicial Notice**

Plaintiffs object to Apple's request that the court judicially notice a document Apple identifies as the contract that all consumers must enter into before making purchases from iTunes. Mot. at 9; RJN, Ex. 5.

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers

evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond. A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 907–08 (9th Cir. 2003) (citations omitted).

There are two ways the court might properly consider this document on defendant's motion to dismiss. Although the parties make arguments under each theory, they do not distinguish between them. First, the document might be incorporated into the complaint by reference. Second, the court might take judicial notice of it.

### a. Incorporation by Reference

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Id. at 908. "[I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) (internal quotation marks omitted). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." Ritchie, 342 F.3d at 908. "We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

"[I]f the document merely creates a defense to the well-pled allegations in the

17

complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims. . . . [W]hat inferences a court may draw from an incorporated document should also be approached with caution." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002–03 (9th Cir. 2018).

The contract is not incorporated into plaintiffs' complaint by reference. First, the complaint does not rely on it at all—implicitly nor explicitly. Plaintiffs' complaint alleges express and implied warranty claims based on language presented by the Apple TV when accessing the iTunes store. Although some of Apple's defenses rely on the contract, none of plaintiffs' claims relies at all on its existence. See Khoja, 899 F.3d at 1002 ("if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint"); Ritchie, 342 F.3d at 908; see also Kulesa, 2012 WL 12886844, at *8 ("The FAC does not include factual allegations related to the content of the agreement, nor is it evident that Plaintiff relies on the License. PCI counters that because Plaintiff asserted a breach of contract claim and the License states it is 'the entire agreement' between the purchaser and PCI. Nonetheless, the Court finds that the License is not clearly 'central to the allegations' and declines to consider it at this stage of the litigation.") (citation omitted); cf. Sams v. Yahoo! Inc., 713 F.3d 1175, 1178 (9th Cir. 2013) (subpoenas incorporated by reference where claims alleged that the subpoenas failed to comply with the law).[5]

### b. Judicial Notice

"The court may judicially notice a fact that is not subject to reasonable dispute

---

[5] Furthermore, there are disputed issues as to the document's relevance. See Coto Settlement, 593 F.3d at 1038 (doctrine of incorporation by reference extends where "there are no disputed issues as to the document's relevance"). Plaintiffs argue that even if they entered into a contract with Apple governing their purchases, there is no reason to believe this is the version they entered into. Apple argues that this version of the contract includes a clause reserving the right for Apple to modify it, so this version "is operative and controls the transactions at issue regardless of the plaintiffs' unsupported suggestion that they 'possibly' could have agreed to a different agreement." Reply at 4. But that kind of bootstrapping doesn't work. Apple's argument does not address how the contract plaintiffs actually entered into could be modified.

18

because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Here, it is subject to reasonable dispute whether the plaintiffs entered into this version of the contract—which plaintiffs in fact dispute. Even if it is accepted that this contract was Apple's standard agreement during a particular period of time, it is subject to reasonable dispute whether plaintiffs entered into it during that time. See Khoja, 899 F.3d at 999 ("A court must also consider—and identify—which fact or facts it is noticing . . . . Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."). Apple's argument that this contract reserves the right for Apple to modify it says nothing about the terms of any contract actually entered into between plaintiffs and Apple.

Whether or not it is appropriate to take judicial notice of the fact that this contract was Apple's standard agreement at some point, the court cannot take judicial notice of Apple's contention that the parties entered into this particular agreement. See Lee, 250 F.3d at 690.

For the foregoing reasons, Apple's request for judicial notice of Exhibit 5 to its request for judicial notice is DENIED.

## CONCLUSION

For the reasons set forth above, Apple's motion to dismiss, dkt. 23, is DENIED in its entirety.

**IT IS SO ORDERED.**

Dated: March 13, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge